**Mamie Lee GLOVER, Plaintiff,**

v.

**SILENT HOIST & CRANE COMPANY, INC., and Liberty Mutual Insurance Company, a corp., et al., Defendants.**

Civ. A. No. 78–L–0321–S.

United States District Court, N. D. Alabama, S. D.

June 15, 1979.

Edward L. Hardin, Jr., James T. Collins, Hardin, Stuart & Moncus, Birmingham, Ala., for plaintiff.

Brittin T. Coleman and Robert W. Bradford, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for defendant, Silent Hoist.

Charles E. Sharp, Sadler, Sadler, Sullivan & Sharp, Birmingham, Ala., for defendant, Liberty Mut.

## MEMORANDUM OPINION

LYNNE, Senior District Judge.

Guided by the teaching of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969), the Court has carefully reviewed the transcript of the evidence and the admitted exhibits to determine whether the motion for a directed verdict, filed in behalf of defendant, Liberty Mutual Insurance Company (Liberty Mutual), at the close of the evidence, as to which ruling was reserved, should have been granted. The Court concludes that it should have been and that judgment must now be entered for such defendant notwithstanding the verdict of the jury in favor of plaintiff, assessing damages in the amount of thirty-five thousand dollars.

On September 16, 1975, plaintiff's husband, Grady Glover, was killed instantly when struck by a Silent Hoist fork lift (dolly) being operated by his fellow employee, James Taylor, on the premises of Reynolds Metal Plant (Reynolds) at Listerhill, Alabama. Plaintiff brought suit against Silent Hoist and Crane Co., Inc., contending that the death of her husband proximately resulted from the negligence of Silent Hoist in the manufacture and sale of the dolly under the Alabama Extended Products Liability doctrine and against Liberty Mutual, insisting that his death proximately resulted from its negligent inspection of Reynolds. Plaintiff executed a *pro tanto* release to Silent Hoist and its motion to dismiss the action against Silent Hoist with prejudice

was granted. The case proceeded to trial against Liberty Mutual.

Taylor was moving his dolly, six feet in width, forward with a load of aluminum coils approximately six feet in height and twenty-five thousand pounds in weight. His progress was down a fire lane, about fifteen feet wide, which ran all the way through the sprawling Sheet Finishing Department and through which the main traffic flow went back and forth through the building. When he arrived at the intersection of the aisle of Bay 67 with the fire lane, which was protected by a safety mirror, he brought his vehicle to an almost complete stop with his diesel motor idling, glanced in the mirror, observing no pedestrian in the aisle, mashed on the gas, attaining a speed of from three to five miles per hour, and struck Glover, whom he never saw, in or about such intersection.

While operating his dolly in a forward movement Taylor, despite the position of the loaded coils, could see ahead for approximately twenty feet while his view was totally obstructed for a distance of from six to eight feet.

Glover was working the four to twelve o'clock shift with a twenty minute supper break at eight o'clock. At the break Glover apparently left his work area and proceeded across the fire lane in the direction of a cooler in which he had placed his iced tea when he was struck by the dolly. Apparently he never observed its forward movement when its motor was revved up.

For a period of several years prior to and at the time of Glover's death Liberty Mutual provided Reynolds with Workmen's Compensation Insurance. By contract it reserved the right, but assumed no obligation, to make safety inspections of the Reynolds' plant. From time to time, as evidenced by plaintiff's exhibits 13, 14, 15, 16, 18, 19, 21, 23 and 24, through its loss prevention employees it made on-site inspections and held conferences with and made recommendations to capable safety engineers employed by Reynolds.

In view of the history of two fatal accidents in the cast department involving pe-

destrians and dollies, the focus of its inspections and conferences was on the ". . . evaluat[ion] of the in-plant vehicle exposure that you have" (plaintiff's exhibit 16). In its report of a visit to the Reynolds' plant, dated May 30, 1974, it identified the problem which resulted in Glover's death by advising Reynolds that "Pedestrian traffic is a serious exposure—people and dollies use the same aisleways" (plaintiff's exhibit 15).

Although it recommended a traffic flow study, it did not undertake to make one; it was under no duty to perform the in-depth study advocated by plaintiff's expert, Van Namee. There was no evidence that Liberty Mutual's employees had ever physically inspected either the locale of the accident or the dolly involved, or a similar one, in either a loaded or unloaded condition. It is highly relevant that Reynolds' safety engineers were aware of the danger inherent in the simultaneous presence of pedestrians and machines in certain areas of the plant and were making constant efforts to eliminate or minimize such danger.

In essence, the thrust of plaintiff's claim is that since Liberty Mutual gratuitously undertook to make safety inspections, as it had a right to do, its failure to broaden their scope to include a full-blown traffic flow study and to observe the movement of loaded dollies down the fire lane constituted negligence which proximately caused Glover's death. The Court disagrees.

█ Alabama case law, by which the Court is *Erie* bound in this diversity action, enables the Court to dispense with an analysis of the misfeasance—nonfeasance dichotomy under the facts of this case. Extracted from the most recent opinion of the Alabama Supreme Court in *Hughes v. Alabama Power Co.,* 13 ABR 823 (March 2, 1979), are the following expressions:

\*   \*   \*   \*   \*   \*

In a suit of this type the complainant must prove that the defendant had (1) undertaken to inspect the construction site, *particularly the area in which the injury causing hazard is located,* (2) performed such inspection negligently, and (3) that such negligence was the proximate cause of his injuries. (Emphasis added).

\*   \*   \*   \*   \*   \*

There is no evidence that USF&G ever had or undertook a duty to correct the safety hazards which it discovered. This court has never imposed such a duty.

USF&G discovered and reported the very hazard which resulted in the Hughes' fall.

\*   \*   \*   \*   \*   \*

. . . therefore the trial court did not err in granting a directed verdict in favor of USF&G.

*Accord: Stacy v. Aetna Casualty & Surety Company,* 484 F.2d 289 (5th Cir. 1973); the unreported opinion of this Court in *Nicholson v. United States,* Civil Action No. 76–L–0061–S (February 8, 1979), and *Fuller v. Aetna Casualty & Surety Company, Inc.,* 369 F.Supp. 967 (S.D.Miss.1974).

As an aside, prior to *Hughes* trial judges and lawyers experienced difficulty in applying the rationale of *United States Fidelity & Guaranty Co. v. Jones,* Ala., 356 So.2d 596 (1978). Therein the court seemed to say that there were "three types of torts found in the applicable section of the Restatement." (The Restatement of Torts, Second, § 324A).\* Theretofore it had been generally assumed that such section was designed

---

\* The Restatement of Torts, Second, § 324A, provides:

    One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or
    (b) he has undertaken to perform a duty owed by the other to the third person, or
    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

to suggest three alternative methods to establish a causal connection between the single tort of negligent inspection and resultant physical harm. While recognizing that subsections (a) and (b) of Section 324A remain viable, the Court concludes with the cryptic statement: "Reliance is not an absolute requisite of the tort" (subsection (3)). The court indulged in no analysis of the facts to demonstrate that proximate cause was established under either subsection (a) or subsection (b). *Hughes* may have effectively solved the dilemma.

When the verdict of the jury was returned the Court impulsively stated in the presence of the jurors that, in its opinion, the evidence made out a clear and overwhelming case of contributory negligence. Upon reflection, it is concluded that such issue was properly submitted to the jury and that a judgment for the defendant notwithstanding the verdict on that issue would be improper. The facts have been set forth in some detail as a premise for the Court's opinion that reasonable jurors could have found that Glover acted with due care for his own safety. They could have found that Glover proceeded to cross the fire lane when he observed the dolly in a stopped position with its motor idling; that he was in such close proximity to the vehicle that he assumed he was observed by its operator, and that he had almost cleared its path when it struck him with its sudden, unexpected surge.

In conclusion, judgment will be entered in favor of defendant notwithstanding the jury verdict for plaintiff because of plaintiff's failure to introduce even a scintilla of evidence that Glover's death proximately resulted from Liberty Mutual's negligent inspections or recommendations.