TORBERT, Chief Justice.
In this case the trial court granted summary judgment in favor of the Mead Corporation and against Appellant/Plaintiff, an injured employee of an independent contractor.
*460 The facts of this case are as follows:
On April 19, 1973, the Mead Corporation (Mead) and Daniel Construction Company (Daniel) entered into a letter agreement whereby Daniel agreed to construct a mill for Mead. Mead later assigned its rights under the letter agreement to the Industrial Development Board of the City of Stevenson (the Board). Subsequent to this assignment, Mead and the Board entered into a lease agreement whereby the Board as lessor agreed to construct the building as directed by Mead, the lessee. This lease agreement provided that Mead would advance to the Board all of the funds necessary to construct the mill pending the issuance of bonds to finance the project. On May 19, 1973, Mead, the Board and Daniel entered into an agreement in which Daniel assigned all of its rights under the prior letter agreement to Davis Constructors and Engineers, Inc. (Davis).
Thomas A. Smith (appellant), an employee of Davis, was injured while working on construction of the mill. He was injured while using a ramset (nail gun) to attach a plywood base to concrete. The nail, instead of going directly into the concrete, ricocheted into his knee. The tool used, a ramset, was supplied to the appellant by Davis as provided by contract.
The appellant brought actions against Davis, Daniel, Mead, three co-employees, the manufacturer and the assembler of the nail gun. This appeal relates only to the action brought against Mead.
The appellant alleged that Mead failed to provide him with a safe place to work and failed to provide him adequate and proper tools. Mead filed a motion for summary judgment which was argued on January 17, 1979. On this same day the appellant filed his response to the motion and amended the complaint to allege that Mead failed to provide sufficient medical treatment. On February 15, 1979, the trial judge granted Mead’s motion for summary judgment and dismissed the complaint with prejudice, and appellant appeals. The issue presented on appeal is whether the trial court erred in granting summary judgment and thus was in error in concluding that there was no genuine issue as to any material fact.
The standards of review in this court on appeal from a grant of summary judgment are stated in Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976).
On appeal from summary judgment, the appellate court looks at the same factors which the court below considered in ruling on the motion. 10 Wright & Miller, Federal Practice and Procedure, § 2716, p. 430 (1973). Rule 56 of the Alabama Rules of Civil Procedure states that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” On a motion for summary judgment all reasonable inferences from the facts are viewed most favorably to the non-moving party and the moving party is required to establish that the other party could not recover under ‘any discernible circumstances.’ Folmar v. Montgomery Fair Company, Inc., 293 Ala. 686, 309 So.2d 818 (1975); see United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir. 1973); Nyhus v. Travel Management Corp., 151 U.S.App.D.C. 269, 466 F.2d 440 (1972).
Because of the nature of negligence actions, with their questions of reasonableness and proximate causation, summary judgment will not ordinarily be properly granted in such cases. In the case before this court, though, the motion was properly granted as to the negligence and attractive nuisance counts.
Appellee’s motion for summary judgment was submitted to the trial court upon the pleadings, an affidavit of an agent of Mead, and the contractual documents involved, as well as the response of the appellant and the oral arguments of the attorneys.
*461 In reviewing the contracts as written, it is apparent that Mead and the Board entered into a lease agreement with Mead designated as lessee and the Board as lessor. Both parties agree that there is no case in Alabama imposing liability on a lessee to an employee of an independent contractor. The appellant contends, however, that the lease agreement was entered into as a means of providing Mead a tax advantage and that Mead was either in actual control or had the right of control of the project and should be treated as the owner.
A case very similar to the present one, Hutto v. Vanity Fair Mills, 350 So.2d 417 (Ala.1977), involved the construction of a mill by Tag Construction Company, Inc. (Tag). The Industrial Development Board of the City of Jackson, as lessor, agreed to construct the building in accordance with the plans and specifications furnished by Vanity Fair, the lessee. An employee of Tag was injured while working on the construction of the mill. The injured employee sued Vanity Fair. The trial court directed a verdict in favor of Vanity Fair. In an opinion by Justice Shores, this court held:
Plaintiff contends that Vanity Fair “controlled” the work being done at the site where he was injured. However, there is nothing in the record to support this contention. The evidence does show that Mr. Blankenship was Vice-President and General Manager of Tag Construction Company, as well as Chief Operating Engineer for Vanity Fair. At the time of the injury complained of, he was being paid by Tag Construction Company and was, in that capacity, in charge of the project. There is also some evidence that when Tag Construction Company was formed in 1972, some of the employees of Vanity Fair became employees of the new corporation. The record is devoid, however, of any evidence that Vanity Fair controlled the affairs of Tag Construction Company, which was admittedly a separate entity. The plaintiff also asserts that when people were hired to work for Tag Construction Company, they were frequently interviewed in the offices of Vanity Fair in Monroeville. The offices of Tag Construction were located nearby; but, according to Mr. Blankenship, this was a mere matter of convenience. It was simply more convenient than doing the paper work at the job site. There is no question but that all employees, including Blankenship, were paid by Tag Construction Company.
At the time of the trial, Tag Construction Company, was still engaged in the construction business and had some fifty employees. The plaintiff has simply failed to show by the evidence that Vanity Fair controlled the operations of Tag Construction Company, and has failed to produce any evidence that Vanity Fair controlled the project upon which he was working at the time of his injuries. The trial court, therefore, properly directed a verdict in its favor.
In that case, as in the present one, it is clear that the lessee did not control the affairs of the independent contractor. In both cases the independent contractor was acting as a separate entity. Nor in either case did the lessee provide the employee of the independent contractor with a place in which to work.
It is also clear in the present case that Mead did not supply the tool that the employee was using when he was injured; Davis was under a contractual duty to supply the tool and did actually supply the tool used.
Appellant asks this court to look beyond the lease agreement in order to conclude that Mead was the owner and thus in charge of the project. Appellant cites to us a construction site accident case which imposed liability on Alabama Power Company for the injury of an employee of an independent contractor. Alabama Power Company v. Henderson, 342 So.2d 328 (Ala.1977). The facts and holding in that case are as follows:
Alabama Power Company contends the evidence was insufficient to sustain a jury finding that it breached a duty owed plaintiff, as a proximate consequence of which he was injured. It admits respon *462 sibility for the kind of ingredients used in mixing the concrete and the quantity of each. It maintained employees at the concrete mixing plant to continuously check the mixture for suitability for use on this particular job; also maintained an employee at the construction site who supervised the pouring of the concrete at all times, and periodically checked the concrete for rate of hardening. The concrete mixture on the day of the accident contained plastiment, which makes the concrete more workable; it also increases the amount of time required for setting or hardening. Henderson’s evidence tended to show that, due to the increase in the amount of plastiment in the mixture, the first one to two feet of concrete poured failed to set properly, and when another three feet were poured, the hydrostatic pressure created by the soft concrete caused the form to buckle and the concrete to pour out. APC maintains that the forms, owned by Custodis, used to hold the concrete in place were faulty; that it, APC, had no duty to know the forms were not designed to hold a full load of wet concrete, or that it was necessary for concrete to harden at any particular rate.
The evidence tended to show APC had great authority, control and supervision over the construction of the stack; evidenced by its contract with Custodis and by maintaining, through its employees, close supervision over the mixing and pouring of the concrete. The ultimate test of defendant’s duty to use due care is the foreseeability of the harm which would result if due care was not exercised. Under the evidence APC was chargeable with knowledge: of the suitability of the forms for holding concrete; that the addition of plastiment retarded the rate of hardening of concrete, and failure of the concrete to harden properly would allow hydrostatic pressure to build and result in failure of the forms. The evidence was sufficient to authorize the jury to find APC owed a duty to Henderson which it breached and his injuries resulted.
In that case, this court in effect held that the evidence tended to show that Alabama Power Company had great authority, control and supervision over the construction as evidenced by the contract and by maintaining, through its employees, close supervision over the mixing and pouring of concrete. Two cases decided subsequent to our decision in Alabama Power Company v. Henderson, supra, were decided adversely to the contentions of the appellant herein on the basis that the owner did not exercise control over the performance of the work by the independent contractor. Hughes v. Hughes, 360 So.2d 1384 (Ala.1979); Chrysler Corporation v. Wells, 358 So.2d 426 (Ala.1978).
The present case is likewise distinguishable from the Alabama Power Co. v. Henderson case for the same reasons articulated in the two cases referred to above. In this case, from the matters submitted on appel-lee’s motion for summary judgment and the response thereto by appellant, we find no genuine issue of fact that Mead had control or the right to control the construction project. Accordingly, the trial court was correct in granting summary judgment in favor of Mead.
AFFIRMED.
MADDOX, JONES, SHORES and BEAT-TY, JJ., concur.