470 So.2d 1113 (1985)
Michael KENNEMER, J.W. Wallace, Charles Partain, and Ricke Jenkins
v.
Paul J. McFANN, Kathy McFann, and Curtis Broughton.
83-82.
Supreme Court of Alabama.
March 15, 1985.
Rehearing Denied May 10, 1985.
*1114 William W. Sanderson, Jr. of Lanier, Shaver & Herring, Huntsville, for appellants.
John Plunk of Alexander, Corder & Plunk, Athens, for appellees.
JONES, Justice.
This co-employee suit, pursuant to Code 1975, § 25-5-11, presents three issues on appeal: Whether the trial court erred 1) in its oral instructions to the jury with respect to the duties owed to Plaintiffs by Defendants; 2) in its denial of Defendants' motions for a directed verdict and judgment notwithstanding the verdict; and 3) in instructing the jury on certain rules of the road.
Plaintiffs Paul J. McFann and Curtis Broughton[1] suffered on-the-job injuries while passengers in a truck owned by their employer, Wright and Lopez, Inc., and operated by their immediate supervisor, Michael (Mike) Kennemer, one of the Defendants. Although the case was initiated against multiple third-party defendants, it was submitted to the jury against Mike Kennemer, J.W. Wallace, Charles Partain, and Ricke Jenkins, co-employees of the injured Plaintiffs.
The statement of Plaintiffs' claims may be summarized as follows: 1) the driver of the truck, Kennemer, was negligent in beginning descent of a mountain when he knew or should have known that the truck was overloaded and that it had a defective braking system; in descending the mountain in too high a gear; in descending with excessive speed; in failing to inspect the truck's and its trailer's braking systems; in failing to provide a safe place for Plaintiffs to work; and in failing to implement an effective safety program; 2) supervisors Jenkins, Partain, and Wallace were negligent in inspecting the truck's and its trailer's braking systems; in failing to properly train, instruct, and warn Defendant Kennemer in the use, operation, maintenance, and management of the truck; in failing to provide a reasonably safe place for Plaintiffs to work; in failing to implement an effective safety program; and in failing to warn Defendant Kennemer of the defective condition of the truck's and its trailer's braking systems.

Issue No. 1

Jury Charge re: Defendants' Duty
The jury instruction made the basis of this allegation of error reads:
"Now, the law also says that a person who, under the law, is an employer is required to furnish a reasonably safe place for the employee to work and to furnish safety devices and safeguards and shall adopt and use such methods in the process reasonably adequate to render such employment and places where the employment is performed safe for the employees and others who are not trespassers and he is to meethe is to do everything reasonably necessary to protect the life, health and safety of his *1115 employees. Now, the question is presented then what is an employer and the law says that every person, firm, corporation, partnership, agent, manager, representative, foreman, or other person having control or custody of any employment, place of employment or of any employee is an employer, except for agricultural and domestic servants which does not apply in this case. So, then, the definition of an employer, that is a person who is under a duty legally to furnish a safe place to work and perform reasonablyto take all measures reasonably necessary to render the employment safe is any person, firm, corporation, partnership, agent, manager, representative, foreman or other person having control or custody of any employment or place of employment or any employee."
This instruction, say Appellants, left the jury with the erroneous impression that the law imposed upon co-employee defendants the same duty as that imposed by law upon employers. If the trial judge's instruction had ended here, we would not hesitate to reverse the judgments; however, the above-quoted language is but a portion of his entire charge relating to the co-employee Defendants' legal duty. It is not necessary to set out the whole of his instructions. Suffice it to quote the judge's comments in response to Defendants' objection:
"Well, in answer to that, I want to make it clear that I went over the basic outline of the charges there.... Then I went back and I thought I read the statute.... I just want to point out that I went through the statute and defined the duty. I was merely running through the wholegoing over the whole thing to give an overview like an opening statement, and I went back and explained it."
The record supports the trial judge's own explanation that his reference to the "safe place" statutea duty imposed upon the employerwas a mere background or overview approach from which he then detailed the requirement of assumption or delegation of that duty to or by the co-employee as a requisite for a finding of individual liability. Indeed, the trial court gave the Defendants' requested charges 10 and 13:
"10. The burden is on the plaintiffs in this case to prove with specificity each defendant's duty that was delegated to him by the employer or assumed by said defendant and to prove a breach of this duty before the plaintiffs may recover of said defendants. Plaintiffs may not recover of any defendant solely because of the job or position he occupied with the company at the time of the accident. Such position or job of the defendant, without more, cannot serve as a basis for a co-employee's liability."
"13. You are instructed that the named individual defendants, J.W. Wallace, Ricke Jenkins, Mike Kennemer, and Charles Partain, are the only defendants in this case. If you are reasonably satisfied from the evidence that the plaintiffs' injuries were due to an unknown or unproven cause or to the fault of their employer, Wright and Lopez, Inc., or by some person other than one or more of these named defendants, you may not return a verdict for the plaintiffs in this case."
The subject of co-employee liability has evoked scholarly comment in recent years in both the Alabama Lawyer and the Cumberland Law Review. We quote from J. Smith, Common Law Liability of Supervisory Employee to Subordinate, 40 Ala.Law. 230, 251 (1979):
"Alabama recognizes an employer's common law obligation to employees to provide a safe workplace, to provide safe equipment, to provide a sufficient number of competent fellow workers, to warn employees of danger, and to instruct. A corporate employer can act only through its agents.... Although the master-servant relation by itself imposes no safety duty upon a servant, a servant's undertaking to perform his employment imposes upon that servant a duty to act with reasonable care. Negligent performance by a servant of duties assigned by the employer will result in personal liability...."
*1116 In a law review note, Co-Employee and Workmen's Compensation Carrier SuitsCommon-Law Assault Upon Workmen's Compensation Exclusivity in Alabama, 11 Cum.Law Rev. 639, 648 (1980), the following appears:
"Obviously, a co-employee must have breached a duty owed to the plaintiff if liability is to attach. Two basic types of duty must be considered. The first type is the common-law duty that every employee owes to his co-employee.... The second type of duty is the duty every employer owes his employees. At common law, this duty required that the employer (1) provide a safe place to work; (2) provide safe appliances, tools, and equipment; (3) warn of dangers of which the employee might reasonably be expected to remain in ignorance; ... (5) promulgate and enforce rules of employee conduct that promotes safety. The Alabama Supreme Court has ruled that the employer `is held to that degree of care which reasonable and prudent men exercise in their own affairs, or the care and diligence which a man of ordinary care and prudence would exercise for his own protection, or the protection of his property.' Alabama, as well as most states, has codified the employer's duty in what is commonly referred to as a `safe place' statute."[2]
The analysis of these two legal articles, beginning with the employer's duty and then tracing that duty forward to the employee when it is delegated to or assumed by the employee, is in essence the analysis used by the trial judge in the instant jury instructions. Furthermore, his instructions left for the jury's determination all factual issues raised by the evidence.
The trial judge, by quoting portions of § 25-1-1, 1975 Code, when taken in concert with the entire charge, including giving Defendants' requested instructions, informed the jury that the employer is primarily responsible for providing employees a safe place to work, but that that duty may be assumed by or delegated to a co-employee, who may be liable for its breach. Furthermore, it was clear from the judge's instructions that without personal fault on the part of a co-employee defendant, regardless of the liability of some other person, the co-employee defendant must be absolved. We hold, therefore, that the trial judge's charge, when taken as a whole, did not constitute reversible error. Treadway v. Brantley, 437 So.2d 93 (Ala.1983). See, also, Welch v. Jones, 470 So.2d 1103 (Ala. 1985).

Issue No. 2

Denial of Motions for Directed Verdict and JNOV
While Appellants/Defendants have argued each of the three issues presented vigorously and thoroughly, it is fair to observe that they treat the directed verdict issue as their major ground for reversal. We agree that this is the most troublesome of the three issues. Our analysis of this issue must encompass an individualized treatment of the evidence as it relates to each individual co-employee Defendant.
We begin with Defendant Partain, who at the time of the accident maintained an office in Cedartown, Georgia, and who had general, administrative responsibility for the company-wide safety program.
Appellees/Plaintiffs have invited our attention to the following excerpts from the record as supportive of the judgment against Partain:
"Q. By whom were you employed in July, 1980?
"A. My employer was Wright & Lopez, Incorporated.
"Q. Incorporated?
"A. Yes.
"Q. And in what capacity in July, 1980?
"A. I was Safety Director for the company.
"....

*1117 "Q. Well, just generally, what did you do as far as the Alabama operations of Wright & Lopez to see that, say, Paul McFann and Curtis Broughton had a reasonably safe place to work and reasonably safe equipment?
"A. Wright & Lopez, I would like to think, is a safety minded company. And we have a very active safety program. As part of that program, we have a detailed safety manual which is distributed to the foremen who supervised the laborers in the field. And various ranges of items are covered in the safety manual. And the policies of the company are listed in the manual, and the information is transmitted to the labor force per a tailgate safety meeting. We recommend that each foreman conduct, with his employees, a weekly documented tailgate safety meeting. Many foremen have safety meetings daily of the dos and don'ts on the job, because of the hazards involved in doing this particular type work. But once a week most crews document a safety meeting with the men on a form.
"....
"Q. But if I understand correctly, that it was a part of your duties to attempt to furnish a reasonably safe place and safe equipment for Paul McFann and Curtis Broughton to have in July, 1980?
"A. That's correct.
"Q. And that would also be true with reference to Mr. Ricke Jenkins and Mr. J.W. Wallace?
"A. That's correct.
"Q. And that would be at the time of this wreck in July, 1980, that would be correct as to all three of you?
"A. That's correct.
"....
"Q. Charles, other than what you had mentioned, did you make inspections in your job as Safety Director in Cedartown?
"A. I did. I made inspections from time to time. As a ruleit was a policy of the company to provide a safe place for employees, and that policy was delegated down to the lowest level of employee....
"....
"Q. You, as the safety director, will agree that in a safety program, the responsibility for implementing the plan falls on the shoulder of the safety director; correct?
"A. That's correct. The plan was published and it was sent out and, for the most part, it was implemented.
"Q. And the basic part of your duty was to see that the safety program and the procedures were implemented and followed; correct?
"A. That's what that says.
"Q. That was part of your duties? Your duties as safety director of Wright & Lopez; right?
"A. Yes.
"Q. And part of that safety program was that no unsafe conditions are allowed to exist; correct?
"A. Correct."
Partain contends that his general superintendence of the overall safety program for his employer did not impose upon him the individualized duty to personally inspect or to otherwise have personal familiarity with each item of the company's equipment; that, in fact, he had never seen the truck involved in this accident; and therefore that the co-employee test of liability set out in Fireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334 (Ala.1980), and followed by Welch, supra, has not been met. We agree. We find that Partain's general administrative responsibility for company-wide safety, under the instant facts, bears such a remoteness to the specific defect which proximately resulted in Plaintiffs' injuries as to entitle Partain to a directed verdict at the close of the evidence, and failing this, to a JNOV.
We understand and appreciate the position of Appellees/Plaintiffs that Partain's own testimony (quoted above) made out a jury issue as to his liability. Appellees *1118 point specifically to his testimony to the effect that it was his duty "to see that the safety program and procedures were implemented and followed," and that "part of that safety program was that no unsafe conditions were allowed to exist." We reject Appellees' contention because we are unable to conclude that this testimony raises a reasonable inference of personal and individual culpability for the defective and unsafe condition of the truck which resulted in their injuries.
Next, we consider the liability of Kennemer, driver of the vehicle in question and the immediate supervisor of the injured Plaintiffs. An overview of the pertinent facts surrounding the accident is dispositive of this issue. Kennemer, as truck driver and foreman, and McFann and Broughton, as laborers, were assigned by their employer, Wright and Lopez, to set anchors for telephone poles on top of Keel Mountain in Madison County on July 25, 1980. They drove to the worksite in a two-year-old, two-ton truck outfitted with pole-setting equipment, including an air compressor mounted on a trailer. The trailer weighed between 3000 and 3600 pounds and was not equipped with brakes of any sort. Neither the speedometer nor the emergency brake on the truck was operative.
On the return trip from the jobsite, at the point of a curve about halfway down the mountain, with the truck operating in its third forward gear, the brakes failed completely, and, upon Kennemer's attempt to downshift, the clutch also failed. Kennemer was able to maneuver the truck about another half mile down the mountain before it crashed into a rock embankment. Experts testified to the effect that, under the totality of the circumstances, the lack of any brakes on the trailer, the inoperative speedometer and emergency brake system on the truck, and the failure of Kennemer to properly gear the truck down at the beginning of the descent of the mountain, were all contributing causes of the wreck.
In view of Kennemer's intimate familiarity with the truck over a period of several months and the circumstances under which he was operating it at the time of the accident, we have no difficulty in concluding that the trial judge did not err in denying Kennemer's motion for a directed verdict or JNOV. The evidence of Kennemer's liability was more than sufficient to meet the test of Fireman's Fund and Welch, supra.
Having concluded that the evidence was insufficient to sustain the judgment against Partain because of the remoteness of his duties with respect to the ultimate instrumentality of harm to the injured Plaintiffs, and having concluded to the contrary with respect to Kennemer's direct connection to the accident and the resulting injuries, we now direct our consideration to the remaining supervisory employees. Admittedly, Jenkins, as assistant area manager of Alabama operations, and Wallace, as supervisor of various foremen in North Alabama, with respect to their liability to the Plaintiffs, occupy some middle ground between the two extremes represented by Kennemer and Partain.
While the contrast between Partain's no-liability status and Kennemer's liability status, when viewed from the perspective of the sufficiency of the evidence, is readily apparent, the resolution of Jenkins's and Wallace's liability is more difficult. The evidence of record, however, reveals that the factual issue determinative of the two supervisors' liability is more closely akin to that of Kennemer than to that of Partain. While neither Jenkins nor Wallace was actively involved in the operation of the truck at the time of the accident, they each had personal knowledge that the truck in question was not equipped with an operative emergency brake system, that the trailer was equipped with no brakes, and that the condition of the truck being operated by Kennemer at the time of the accident was in direct violation of the company safety manual's requirement that "all rubber tire vehicles must have service brakes, emergency brakes, and parking brake systems in good service."
*1119 We appreciate the serious contention made by Jenkins and Wallace that they stand in the same no-liability shoes as Partain. They argue that Partain's delegation of responsibilities for safety to them was further delegated by them to truckdriver Kennemer. The facts supportive of Partain's position, however, are dissimilar to the facts surrounding the immediacy of the duties delegated to Jenkins and Wallace. Each of them had first-hand knowledge of the very defect which was a contributing cause to the injuries suffered by McFann and Broughton. Thus, as with Kennemer, we find no error in the trial court's denial of a directed verdict and JNOV as to Jenkins and Wallace.

Issue No. 3

Rules of the Road
We find no merit in the contention of Appellants/Defendants that the "Rules of the Road" instructions were improperly given because the Plaintiffs failed to prove that the accident in question occurred on a public highway. The record is replete with evidence, including maps of the area, from which the jury could reasonably infer that Keel Mountain Road is a public highway. Code 1975, § 32-1-1.1(23); Davenport v. Cash, 261 Ala. 380, 74 So.2d 470 (1950).
AFFIRMED AS TO DEFENDANTS KENNEMER, JENKINS, AND WALLACE. REVERSED AND JUDGMENT RENDERED AS TO DEFENDANT PARTAIN.
FAULKNER, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, J., concur specially.
BEATTY, J., concurs in part and dissents in part.
MADDOX, Justice (concurring specially).
Even though I believe that Grantham v. Denke, 359 So.2d 785 (Ala.1978), which authorizes co-employee suits by persons covered by the Workmen's Compensation Act, was incorrectly decided (see my reasons in my dissenting opinion in that case), I can see no just reason to continue dissenting in like cases, especially in view of the fact that the legislature has now addressed the question of co-employee suits in Alabama by adopting legislation which affects those suits. Act No. 85-41, Acts of Alabama, adopted January 9, 1985, Second Special Session, 1984.
TORBERT, C.J., concurs.
BEATTY, Justice (concurring in part; dissenting in part):
I concur in the majority opinion except as to that part which deals with the liability of defendant Partain.
It is true that the testimony of defendant Partain indicates that as safety director, his general administrative duty was to implement the safety programs. However, he also testified that "it was a part of [his] duties to attempt to furnish a reasonably safe place and safe equipment" for the employees. Thus, Partain's duty was to do more than act as a mere supervisor of others; his duty was to actually furnish safe equipment, etc. This testimony provided at least a scintilla of evidence necessary to prove that Partain had a personal duty toward the injured employees themselves and not merely a general administrative duty. Therefore, the co-employee test of liability was in fact met.
NOTES
[1] The third Plaintiff is McFann's wife, Kathy, the validity of whose loss of consortium judgment, of course, rests upon the merits of her husband's case.
[2] There follows an analysis of how co-employees may become liable for breach "of a duty that the employer owed the employee when the employer's duty is delegated to or is assumed by supervisors or officers." Id., at 650.