PER CURIAM.
Plaintiff’s decedent was killed in an industrial accident involving a finishing line compactor operated on the premises of his employer, Buckeye Cellulose Corporation (“Buckeye”), a separately incorporated, wholly owned subsidiary of Procter & Gamble Company (“P & G”). P & G appeals from a judgment based on a jury verdict in favor of the plaintiff.
The case went to trial on two theories. First, plaintiff alleged that P & G negligently performed safety inspections at Buckeye and that, as the result of the allegedly negligent inspections, plaintiff’s decedent was killed. Second, plaintiff strenuously argues that the case was also tried on the theory that P & G, failed to provide plaintiff’s decedent with a safe workplace; P & G, 'with similar tenacity, argues that the case was not tried on that theory.
As a threshold matter, we conclude that the case was, in fact, tried on both theories. Throughout the record, we find remarks by both parties’ lawyers and by the trial court demonstrating uncertainty regarding whether the case was being tried on both theories, or only on the negligent inspection theory. At the pretrial conference, the plaintiff struck the count of her complaint that alleged that P & G owed, but breached, a duty to provide the plaintiff’s decedent with a safe workplace. Despite at times agreeing that the case was strictly being tried on the negligent inspection theory and initially marking the requested instructions on the failure-to-provide-a-safe-workplace claim “Refused,” the trial court at other times wavered, and eventually charged the jury on both theories. We are of the opinion that the jury, therefore, could have returned its verdict on either theory, and that the two theories are sufficiently different that a general verdict, in the context of this case, can not stand. Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981).
P & G has raised nine issues for review. We need to address but two. We frame the first issue- thusly: Can an entity not part of the corporate or business infrastructure of a worker’s employer be charged with the duty to provide a safe workplace for the employer’s worker?
The duty to provide a safe workplace is a duty imposed by statutory law on all employers. Code 1975, § 25-l-l(a), provides:
“Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and the places where the employment is performed reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health and safety of his employees and others who are not trespassers.” (Emphasis added.)
“Employer” is defined as:
“[Ejvery person, firm, corporation, partnership, joint stock association, agent, manager, representative, foreman or other person having control or custody of any employment, place of employment or of any employee, but the terms of this section shall not be construed to cover *951 the employment of agricultural workers or domestic servants.”
Code 1975, § 25-l-l(c)(l). Reading these provisions together, we conclude that the duty to provide a safe workplace is imposed upon the one who has control or custody of the employment or place of employment.
Is that duty delegable? In Fontenot v. Bramlett, 470 So.2d 669 (Ala.1985), this Court observed the following regarding § 25-1-1:
“In accord with this statute, which is merely a codification of earlier common law, Foreman v. Dorsey Trailers, Inc., 256 Ala. 258, 54 So.2d 499 (1951), it has been recognized that, under proper facts, supervisory personnel, including corporate officers, may be held liable as employees for negligently failing to provide their subordinates with a reasonably safe place in which to work. Fireman’s Fund American Insurance Co. v. Coleman, 394 So.2d 834 (Ala.1980); United States Fire Insurance Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970). Such liability may be imposed if it is proved that, as a part of their responsibilities, the defendants who were] supervisory personnel were delegated or assumed their employer’s duty to provide a safe work place or a material portion of that duty. Coleman, supra, at 336-38.”
Fontenot, 470 So.2d at 672 (emphasis added). The defendant co-employee in Fonte-not argued that “the employer’s statutory duty under § 25-1-1 is non-delegable and, therefore, may not be the basis for co-employee liability.” This court answered:
“ While he is correct that § 25-1-1 imposes a duty to provide a safe work place upon an employer alone based solely upon his status, he apparently fails to perceive that the statute in no way prohibits the imposition of liability upon co-employees, including supervisors or corporate officers, where, as stated above, they are delegated or voluntarily assume the duty of maintaining a safe work place.”
Id. at 673 (emphasis added).
Both the majority opinion and Justice Jones’s concurrence in Fireman’s Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala.1980), shed light on this topic. The majority in Fireman’s Fund held that supervisory employees and corporate officers, in an appropriate factual scenario, could be charged with the duty to provide a safe place to work. Id. at 336-37. Justice Jones likewise addressed the potential liability of co-employees for failing to provide a safe work place:
“Only where the employer, except for employer immunity, owes a duty of due care, the breach of which causes injury, and this duty is delegated by the employer to the co-employee defendant, or voluntarily assumed by him and the defendant breaches this duty through personal fault, can liability be imposed upon the co-employee. As in any negligence claim, the breach consists in the defendant’s failure to discharge the delegated or assumed obligation with the degree of care required of a person of ordinary prudence under the same or similar circumstances.
[[Image here]]
“The chief confusion concerning allowable defenses is focused upon the concept of the employer’s ‘nondelegable duty’ to provide a safe place of employment. Historically, this concept had its inception in the context of the ‘fellow servant’ doctrine — an available defense under the common law in an employee’s suit against his employer. Under the fellow servant doctrine, an employer could not be held liable for a violation of a duty owed to his employee if the performance of such duty was delegated by the master to a fellow employee of the injured plaintiff and the master had exercised due care and diligence in making the delegation. Tyson v. The South & North Alabama R. Co., 61 Ala. 554, 32 Am.Rep. 8 (1878); 53 Am.Jur.2d, Master and Servant, § 302, at 331. Such delegation, exercised with due care, absolved the master of the performance of the duty and, consequently, insulated him from personal liability for the breach thereof. Lovell v. DeBardelaben Coal & Iron Co., 90 Ala. 13, 7 So. 756 (1890).
*952 “The harshness of this doctrine prompted the courts to carve out special sets of circumstances in which the employer could no longer escape responsibility by transposing to a fellow worker of the injured employee the exclusive fault resulting in the injury. It was held that the duty of a master to furnish a reasonably safe work place for his servants was a personal duty which could not be delegated. Foreman v. Dorsey Trailers, 256 Ala. 253, 54 So.2d 499 (1951); Woodward Iron Co. v. Nunn, 205 Ala. 543, 88 So. 659 (1921); Woodward Iron Co. v. Boswell, 199 Ala. 424, 75 So. 3 (1917); Chamberlain v. Southern Railway Co., 159 Ala. 171, 48 So. 703 (1909).
“The instant individual Defendants, with some supporting authority, contend that this concept prevents the employer’s delegation of those very duties which they are charged here with failing to perform. Because this duty rests upon the employer and is nondelegable, the supervisory co-employee Defendants claim they cannot be charged with a breach thereof.
“This is a misconstruction of ‘nondele-gable duty.’ This concept is grounded upon the notion that certain duties owed by an employer to his employees are so inherent and fundamental to the employer/employee relationship that the employer cannot escape liability to an injured employee resulting from its breach by delegating its performance to other employees and then seeking refuge in the ‘fellow servant’ defense. It does not mean the duty in fact cannot be delegated. Indeed, within the corporate employment structure, it can be discharged only through its delegation to persons other than the employer.
“ ‘Nondelegable duty,’ then, means that duty for the breach of which the master, despite its delegation to others, is liable for resultant injuries to the employee. Otherwise, the ‘fellow servant’ rule charges the injured employee with his co-employee’s negligent performance of this delegated duty, thus insulating the employer from liability. This ‘non-delegable duty’ concept, when applicable, imposes separate and several liability upon the employer and the tortfeasor employee in a claim by a co-employee whose injury results from the breach of such duty.”
Fireman’s Fund, 394 So.2d at 347-48 (Jones, J., concurring) (footnote omitted).
Most telling in the Fireman’s Fund case, however, is the Court’s recognition that one not within the business of the employer, while it might be held liable for negligent inspection, generally does not assume a duty of providing a safe workplace for the employer’s workers. “Even though Fireman’s Fund had no common law duty to provide a safe place and working conditions for Dorsey’s employee’s; it voluntarily undertook to inspect the premises pursuant to a mutual agreement it has with Dorsey.” Fireman’s Fund, 394 So.2d at 338.
The duty of providing a safe workplace, then, is generally non-delegable to any party not within the business of the employer.[1] This is the clear meaning of § 25-1-1, and the plain understanding of our cases interpreting that statute. A review of the cases considering this tort most often demonstrates that this cause of action is asserted against supervisory co-employees, and rarely, if ever, asserted against “outsiders.”[2]
*953 In the case at bar, it is readily apparent that P & G was neither a co-employee of the plaintiffs decedent nor in any other way within the business of Buckeye. Consequently, as such, it could not have assumed or have been delegated the duty to provide plaintiffs decedent with a safe workplace in the traditional co-employee sense of the tort.
Consistent with the statutory definition of “employer” in § 25-l-l(c)(l), however, we have recognized an exception to the foregoing general rule when an outside party is in “control or custody” of the worker’s employment. Generally speaking, those cases have arisen either where a subcontractor’s injured employee has sought to charge the general contractor with the duty to provide a safe workplace, or where a general contractor’s injured employee has sought to charge the premises owner with that duty. In those cases, we have required that the plaintiff prove that the defendant exercised control over the jobsite and control over the manner in which the work was to be done, and prove either that the work was intrinsically dangerous or that the defendant had undertaken to provide safety on the jobsite. See, e.g., Alabama Power Co. v. Jarman, 549 So.2d 7 (Ala.1989); Alabama Power Co. v. Beam, 472 So.2d 619 (Ala.1985); Alabama Power Co. v. Henderson, 342 So.2d 323 (Ala.1976); Blount Bros. Constr. Co. v. Rose, 274 Ala. 429, 149 So.2d 821 (1962); Foster & Creighton Co. v. St. Paul, Mercury Indem. Co., 264 Ala. 581, 88 So.2d 825 (1956); see Knight v. Burns, Kirkley & Williams Constr. Co., 331 So.2d 651 (Ala.1976). In many cases, defendants have proven by competent evidence either that they had no control over the jobsite or that they had no control over the manner in which the work was performed. In those cases, we have consistently refused to permit a finding of liability. See, e.g., Barron v. Construction One, 514 So.2d 1351 (Ala.1987); Elder v. E. I. DuPont de Nemours & Co., 479 So.2d 1243 (Ala.1985); Bacon v. Dixie Bronze Co., 475 So.2d 1177 (Ala.1985); Beck v. Olin Co., 437 So.2d 1236 (Ala.1983); Columbia Eng'g Int’l, Ltd., v. Espey, 429 So.2d 955 (Ala.1983); Weeks v. Alabama Elec. Coop., Inc., 419 So.2d 1381 (Ala.1982); Pate v. United States Steel Corp., 393 So.2d 992 (Ala.1981); Smith v. Mead Corp., 375 So.2d 459 (Ala.1979); and Chrysler Corp. v. Wells, 358 So.2d 426 (Ala.1978). The justification for this exception is obvious: the parties charged with providing a safe workplace are the ones who either have assumed or have been delegated the duty to do so, or who are in such a position that the jobsite functions as they command.
The question now becomes, does P & G fall within the exception? Based upon our review of the record, we conclude that it does not.
Between 1978 and 1980, the Buckeye plant was under construction. During that time, P & G sent a member of its corporate safety division to assist Buckeye in setting up a safety program. This effort consisted of providing various items of safety literature to Buckeye and implementing a “tracking system” to monitor safety programs. Buckeye chose to adopt “Procter & Gamble’s Safety Policy.”
The Buckeye plant began operations in early 1980, and it employed about 260 people. After Buckeye started business, for all that appears from the record, P & G’s alleged “control” over the jobsite was limited to a few telephone conversations, initiated by Buckeye, relating to safety questions, and two on-site visits by P & G’s safety representatives, one in 1982, and the other in September 1984, approximately one month prior to the incident made the basis of this case. These visits consisted of *954 a P & G representative’s meeting with Buckeye management personnel to discuss safety, and then a 90-minute walk-through tour of the plant. The P & G representative would attempt to identify potential Safety hazards, make suggestions for improving existing safety programs, and attempt to assist Buckeye in maintaining compliance with OSHA (Occupational Safety and Health Administration) standards. We find in the record before us no evidence that P & G controlled the manner in which the work was done at the Buckeye plant.
We hold that Pate v. United States Steel Corp., 393 So.2d 992 (Ala.1981), disposes of this theory of liability. In Pate, the plaintiffs were employed by a contractor who was engaged by United States Steel (“USS”) to work in connection with the construction of some furnaces. The plaintiffs were injured, and they sued USS for allegedly failing to provide a safe workplace. The trial court entered summary judgment against the plaintiffs, and they appealed. Writing for this Court, Justice Adams stated:
“Appellants further argue that USS retained control of the construction activity as a whole, citing the following facts. USS maintained a team of engineers that daily visited the work site with blueprints and specifications in hand to point out deviations from the contract and have them corrected. Several contractors, including Foster, had been hired by USS to build the furnace; and, instead of hiring a construction manager, USS did that job itself. Consequently, USS engineers held weekly meetings with the contractors to review progress, plan work and coordinate the construction.
“None of these activities of USS indicated its control over the manner of constructing the furnace, as contemplated in [Alabama Power Co. v.] Henderson [, supra].”
Id. at 995. See also Kennemer v. McFann, 470 So.2d 1113, 1117 (Ala.1985) (no liability for failure to provide safe workplace where “general administrative responsibility for company-wide safety ... bears such a remoteness to the specific defect which proximately resulted in plaintiffs’ injuries”); Clark v. Floyd, 514 So.2d 1309, 1317 (Ala.1987) (reaffirming Kennemer rationale).
Malone v. Beggerly, 545 So.2d 1320 (Ala.1989), furnishes further support for our conclusion. In Malone, 545 So.2d at 1323, we recapitulated our analysis in Harris v. Hand, 530 So.2d 191 (Ala.1988), as follows:
“The positions and responsibilities of Beggerly, Stewart, [and] Sommer ... are more aligned with that of Hand, who visited the job site two or three times a week, met with another employee to keep abreast of the work and learn what tools were needed and how the men were performing, and bought all of the tools, equipment, and supplies that were needed. We especially recognized that, although Hand admitted in his deposition that he was ultimately responsible for the safety of the work place, his position as president did not alone serve as the basis for liability.”
On that basis, just as summary judgment in favor of Hand was affirmed in Harris, summary judgment in favor of Beggerly, Stewart, and Sommer was affirmed in Malone. As is apparent, much more control or custody than is presented by the evidence before us in this case is necessary to sustain a finding that the defendant assumed the duty to provide a safe workplace.
In the case at bar, we are unwilling to hold that the two brief visits by P & G’s safety representatives, coupled with a few telephone calls between P & G and Buckeye relating to safety and the fact that P & G provided some safety literature and other suggestions prior to Buckeye’s opening, amount to “control or custody” of the Buckeye workplace, as envisioned by § 25-l-l(c)(l). There is a complete absence in this case of evidence that P & G had control over the workplace, or, more importantly, that it controlled the manner in which Buckeye’s work was done. Therefore, we conclude that P & G did not undertake to provide plaintiff’s decedent a safe place to work.
Where a defendant, by way of motions for directed verdict and then for j.n. *955 o.v., has specifically challenged the sufficiency of the evidence supporting one or more of several claims, and where the jury has returned a general verdict, if the evidence supporting any one of those challenged claims is insufficient, then the verdict will not be permitted to stand. See Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). In the case at bar, then, we must reverse the judgment of the trial court. But in determining whether to render judgment or to remand, we must examine the sufficiency of the evidence supporting the negligent inspection claim. If the evidence is sufficient to support that claim, we must remand the case.
The evidence supporting the negligent inspection claim tended to show the following: Prior to the start-up of the Buckeye plant in the spring of 1980, a representative of P & G’s corporate safety division went to the Buckeye plant to assist in implementing a safety program. This program consisted of a “safety tracking” system that would allow Buckeye to monitor the effectiveness of the safety practices and procedures; the furnishing to Buckeye of materials relating to on-the-job safety techniques, machine guarding standards, and suggestions on OSHA compliance; and the assurance that a P & G safety engineer would “audit” Buckeye’s safety program “at least every other year.” The “audit” would include, among other things, a walk-through inspection of the plant, which would involve observation of the employees’ work practices and a check for potential OSHA violations.
One month prior to the death of the plaintiffs' decedent, James Fryer, a corporate safety specialist for P & G, conducted such an “audit,” or inspection, of the Buckeye plant. Fryer admitted that, prior to this inspection, he did not review Buckeye’s safety manual to ascertain whether Buckeye had a policy on machine guarding.
The evidence tends to show that, prior to Fryer’s visit, the following features were removed from the compactor: an interlock, or limit, switch, which expert testimony indicated would have prevented the accident if it had not been removed; and an air pipe that ran the length of the compactor, described by some witnesses as a secondary safety feature. There was also evidence that a hinged guard door on the compactor, another safety feature, was'left open 80 — 85% of the time the machine was running, thus creating a dangerous condition, and that the door was “probably” open when Fryer inspected the plant. Several warning and caution labels on the compactor had also been painted over prior to Fryer’s arrival.
During Fryer’s inspection, he spent approximately five minutes at the compactor, while it was in operation, as Buckeye’s plant safety manager explained how the compactor worked. There was expert testimony that it would have been obvious to “anybody” familiar with the type of machinery used in the Buckeye plant that the compactor had a nip point at the discharge end that, if left unguarded, would create a dangerous condition. Buckeye’s plant safety manager testified that Fryer asked no questions during his inspection about safety practices associated with the compactor. There is evidence that P & G, through its inspections, undertook to identify and eliminate safety hazards, and that it failed to comply with those guidelines during the inspection one month prior to the death of the plaintiff’s decedent.
P & G argues that it did not perform a safety inspection. We disagree.- Despite the nomenclature used to describe the task performed — audit, survey, or inspection— the evidence at trial demonstrated that P & G sent its representative to Buckeye’s plant for the purpose of seeking out and identifying safety hazards, eliminating those hazards, and analyzing Buckeye’s overall safety program and making suggestions and recommendations accordingly. In our minds, that conduct is representative of the performance of a safety inspection.
Justice Jones stated the duty owed by the inspecting party applicable in the factual context of this case:
“In defining the nature of the duty undertaken by a voluntary inspection, two aspects must be considered — the physical *956 scope of the undertaking and the degree of scrutiny and action mandated by conditions observed or reasonably observable. Both the actual physical area required to be inspected in a reasonable survey of the premises and the appropriate action to be taken by the inspecting party as a result of the survey must be determined to establish the standard of care which the inspecting party must observe in order to discharge its duty. This standard of care requires that the area inspected be of such a size and nature as to constitute a representative sampling of the work place, that the inspection be done with reasonable care, that hazards observed and appreciated, or which should have been observed and appreciated, be reported with the promptness commensurate with the degree of danger perceived or which reasonably should have been perceived; and that any corrective action within the inspector’s ambit of authority or within the scope of its undertaking be instituted with appropriate haste.”
Fireman’s Fund Am. Ins. Co. v. Coleman, 394 So.2d 334, 349 (Ala.1980) (Jones, J., concurring) (emphasis added); see also Barnes v. Liberty Mut. Ins. Co., 472 So.2d 1041, 1042-43 (Ala.1985).
Essentially, the duty, once assumed, is one of inspecting and reporting. Hughes v. Hughes, 367 So.2d 1384 (Ala.1979). Judge Acker, who, before being appointed to the federal bench, argued the touchstone negligent inspection case, Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971), in this Court, offered the following in another negligent inspection case: “The Alabama Supreme Court [in Beasley ], in effect, said that an inspector cannot wear blinders once he becomes an inspector. ‘Inspection’ contemplates ‘inspection.’ ” Walden v. United States Steel Corp., 567 F.Supp. 1443, 1449 (N.D.Ala.1983), aff'd, 759 F.2d 834 (11th Cir.1985).
In the case at bar, there is evidence that the inspection was negligently performed. Fryer viewed the machine that led to the plaintiff’s decedent’s death, cf. Barnes, supra, 472 So.2d at 1043; Glover v. Silent Hoist & Crane Co., 471 F.Supp. 457, 459 (N.D.Ala.1979); the machine was in operation when he viewed it, cf. Adams v. Travelers Ins. Co., 494 So.2d 401, 403 (Ala.1986); Clark v. Floyd, 514 So.2d 1309 (Ala.1987); and there was evidence that the hazards should have been observed and reported. Cf. United States Fid. & Guar. Co. v. Jones, 356 So.2d 596, 598 (Ala.1978); Fireman’s Fund, supra (Jones, J., concurring).
We conclude, therefore, that the negligent inspection claim was properly submitted to the jury. Because the claim that P & G failed to provide a safe workplace was improperly submitted to the jury, however, the judgment of the trial court is reversed and this case is remanded for a new trial on the negligent inspection claim only.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.

. Professor Larson, speaking of co-employee liability, states: “Suit is also barred if the duty allegedly violated was a non-delegable duty of the corporation, such as the duty to provide a safe place to work...." 2A Larson, The Law of Workmen’s Compensation § 72.13 (1988). In a footnote, Professor Larson, citing Fontenot v. Bramlett, supra, recognized that Alabama law varies from his general statement. Id. at n. 205. Nevertheless, after a review of his treatise we are quite convinced that this eminent authority does not envision the duty to provide a safe workplace generally being imposed on a stranger to the employer’s business.

. E.g., Malone v. Beggerly, 545 So.2d 1320 (Ala.1989); Creel v. Bridewell, 535 So.2d 95 (Ala.1988); Cody v. Louisville & N. R.R., 535 So.2d 82 (Ala.1988); Harris v. Hand, 530 So.2d 191 (Ala.1988); Jones v. Griffin, 530 So.2d 819 (Ala.1988); Ritchie v. Bullock, 529 So.2d 916 (Ala.1988); Jacoups v. Daigle, 521 So.2d 979 (Ala.1988); Barron v. Construction One, 514 So.2d 1351 (Ala. *953 1987); Cook v. Anderson, 512 So.2d 1310 (Ala.1987); Noble v. McManus, 504 So.2d 248 (Ala.1987); Rice v. Deas, 504 So.2d 220 (Ala.1987); Mitchell v. Imms, 488 So.2d 817 (Ala.1986); Mullins v. Summers, 485 So.2d 1126 (Ala.1986); Fontenot v. Bramlett, 470 So.2d 669 (Ala.1985); Kennemer v. McFann, 470 So.2d 1113 (Ala.1985); Brown v. Schultz, 457 So.2d 388 (Ala.1984); Southern Guar. Ins. Co. v. Pittman, 439 So.2d 7 (Ala.1983); Clements v. Webster, 425 So.2d 1058 (Ala.1982); Bell v. Chisom, 421 So.2d 1239 (Ala.1982); Evans v. Kendred, 362 So.2d 206 (Ala.1978); Pipkin v. Southern Elec. & Pipefitting Co., 358 So.2d 1015 (Ala.1978); Atchison v. Horton, 348 So.2d 1358 (Ala.1977); and Sasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973).