This is an appeal from a summary judgment in favor of defendants in a personal injury action. Plaintiff Damon Beck was injured by caustic chemicals while working on the premises of defendant Olin Corporation.
Damon Beck is employed by Corrosion Proof Construction, a division of the Ceilcote Company.[1] Ceilcote makes coatings used to line storage tanks, walkways, floors, etc., chiefly for resistance to harsh and corrosive chemicals. At the time of the accident, Beck was a foreman for Corrosion Proof Construction, overseeing the application of Ceilcote liners. On April 16, 1979, Beck was sent to McIntosh, Alabama, where he was to supervise preparations for a Ceilcote job at the Olin plant in McIntosh.
The Olin plant includes a chemical production facility known as Mercury Cell Room "B". This is a two story concrete building three hundred feet long with no exterior side walls. Chemicals are produced on the second floor, where the floor is periodically washed down and the residue runs out of the open side of the building. A walkway runs the entire length of the building below the open areas where the chemicals are washed out of the second floor. Chemicals in the runoff had corroded the walkway, and the Ceilcote job for which Beck reported was to repair the sidewalk and coat it with a Ceilcote liner.
To protect the walkway from spills while the concrete and the liner were being applied, Ceilcote arranged with Olin for a protective cover to be built over the walkway. Ceilcote hired Amrich Construction Company to construct this shelter, which consisted of a wooden frame running the *Page 1238 
length of the building and covered with plastic and fiberglass. The frame was shorter on the side toward the building — about seven feet high, whereas it was about ten feet high on the high side — so that liquids would run off of the shelter into a drainage basin between the walkway and the building. The frame was covered with sheets of polyethylene and then panels of corrugated fiberglass.
When Beck arrived, George Amrich and his crew had completed the wooden frame and had begun covering it with the plastic and fiberglass. The liquids coming out of the building were getting underneath the fiberglass and forming puddles or bubbles in the plastic. Beck testified in deposition that he was aware of at least one place where the liquids had burned or corroded through the fiberglass. In other places it appeared to have leaked around the supporting posts or between the fiberglass panels.
Beck, Amrich, and some Olin employees consulted on how to stop the liquids from penetrating the fiberglass and collecting in the plastic. Reese Graves testified that he and Charles Humphrey decided to have Amrich empty some of the bubbles by tying a knife to a long stick and cutting the plastic. This spilled the fluids onto the walkway, however, so Beck suggested placing another layer of plastic over the fiberglass. He testified on deposition that he was also considering placing plywood or steel over the worst places.
The accident in question occurred when Beck reached up to touch one of the bubbles to learn whether it contained liquid or crystalline matter. Beck had watched crystalline material fall out of the plastic when Amrich cut the bubble underneath the point where the liquids had burned through the fiberglass, so he reasoned that if a bubble contained crystals, the shelter might need extra reinforcement at that point. He placed his palm under the bubble and pushed up on it slightly. As he pulled his hand away, the bubble burst and the liquid in it streamed down on him. He tried to avoid it, but some of it got under his safety goggles and into his left eye. The first aid attendants at the plant rinsed his eye and he was taken to a hospital, but he lost most of his sight from that eye.
Beck sued Olin, Amrich Construction Company, and three supervisory personnel employed by Olin: Reese Graves, Allen Chafin, and Charles Humphrey. The complaint alleged as follows:
 "That the Plaintiff's injuries and damages were caused as a direct and proximate result of the combined and concurring negligence of the Defendants, their agents, servants or employees in one or more of the following particulars:
 "A) Defendants, the Olin Company, Reese Graves, Allen Chafin and Charles Humphrey, negligently failed to provide Plaintiff, Damon V. Beck, with a safe place to work.
 "B) Defendants, The Olin company and/or Amrich Construction Company, Inc. negligently failed to protect Plaintiff, Damon V. Beck, from contact with and exposure to highly dangerous, toxic and caustic chemical substances.
 "C) Defendants, the Olin Company, Reese Graves, Allen Chafin and Charles Humphrey negligently failed to warn Plaintiff, Damon V. Beck, of the highly dangerous nature of the chemicals and gases manufactured and used in the manufacturing process by Olin, in the area where Plaintiff was required to work.
 "D) Defendants, The Olin Company, Reese Graves, Allen Chafin and Charles Humphrey, negligently failed to provide Plaintiff, Damon V. Beck, with proper safety instructions and equipment.
 "E) Defendant, Amrich Construction Company, Inc., negligently failed to provide Plaintiff, Damon V. Beck, with adequate protection from contact with dangerous, toxic and caustic chemicals.
 "F) Defendants negligently conducted its [sic] business in such manner as to expose Plaintiff, Damon V. Beck, to an unreasonable risk of personal injury."
Depositions and other discovery were conducted, after which the defendants moved for summary judgment. Beck opposed the *Page 1239 
motion, basing his opposition on the pleadings, depositions, and exhibits in the case, and the affidavit of George W. Douglas, Ph.D., the head of the department of mechanical engineering at the University of South Alabama. Douglas based his affidavit on the matters of record; he gave his opinion that the shelter was inadequate and improperly constructed, and then concluded with the statement, "Plaintiff does not appear to have been adequately warned by Defendants of the dangerous nature of the chemicals in the area." The trial court granted summary judgment for all defendants.
Beck argues that the trial court erred in granting summary judgment; he starts from the proposition, supported by numerous decisions of this Court, that summary judgment is ordinarily not appropriate in negligence cases. His second point is that a landowner has the duty to give an invitee sufficient warning of dangers on the premises to allow the invitee to avoid injury. As his third argument, he contends that a jury question is presented as to whether the activities of Olin on its premises were abnormally dangerous. He claims he was given neither adequate warning of the hazards of the chemicals used in the area, nor adequate safety instruction regarding the plant, nor adequate safety equipment; that the shelter was essentially of Olin's design and was inadequate to protect him from the hazardous chemicals; and that the rule that an independent contractor is alone liable does not apply where the work is intrinsically dangerous. The fourth argument Beck raises is that the trial court erred in holding that the danger was open and obvious as a matter of law.
Appellees counter that there is no duty to warn of open and obvious dangers. The Olin defendants add that the owner of premises owes no duty to an employee of an independent contractor injured during the course of his work. Pate v.United States Steel Corp., 393 So.2d 992 (Ala. 1981). Amrich adds that it was a subcontractor of Ceilcote and the duty of safety is on the general contractor.
The appellees correctly cite the law that "the owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of or should be aware of in the exercise of reasonable care." Gray v. MobileGreyhound Park, Ltd., 370 So.2d 1384, 1388 (Ala. 1979), quotingTice v. Tice, 361 So.2d 1051 (Ala. 1978); see also Hand v.Butts, 289 Ala. 653, 270 So.2d 789 (1972); Crawford Johnson Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 (1966).
Beck contends that an exception to this rule, that the owner may be held liable where the work is intrinsically dangerous, applies in this case. Boroughs v. Joiner, 337 So.2d 340 (Ala. 1976); Knight v. Burns, Kirkley, Williams Const. Co., Inc.,331 So.2d 651 (Ala. 1976); Ledbetter-Johnson Co. v. Hawkins,267 Ala. 458, 103 So.2d 748 (1958); Scoggins v. Atlantic G.P.Cement Co., 179 Ala. 213, 60 So. 175 (1912). The exception does not apply, however, because Ceilcote's contract specified that Ceilcote would be responsible for safety. Olin provided Ceilcote with a comprehensive safety manual. Indeed, Beck was on the site to supervise construction of the shelter to shield the concrete and protect the workers from spills.
Beck was aware that some of the chemicals being washed down from the building were caustic. He knew, for instance, that George Amrich was burned on his wrist by spilt chemicals a few days before Beck's accident. Beck placed his hand on the bubble which burst on him to determine whether it contained hot caustic like that which had burned through the fiberglass in another part of the shelter.
The very concern that motivated Beck to test the bubble was that the plastic would not hold the liquids. "I knew by this time the one sheet of polyethylene wasn't going to stop the leaks everywhere. If there were burns here from hot caustic, there were burns other places. That's what I was trying to do, is see them."
Beck presented evidence that the shelter was principally designed by Olin and *Page 1240 
cites the proposition that "where the owner undertakes to prepare and furnish the plans and specifications for his contemplated structure and such plans are faulty or defective the deficiencies therein are attributable to the owner . . . and he is liable for the proximately consequent injury and damages." St. Louis-San Francisco Ry. Co. v. Kimbrell, 226 Ala. 114,145 So. 433 (1932). This rule cannot shift the burden to Olin in this instance because Ceilcote was also responsible for the design and construction of the shelter, as evidenced by the fact that Beck was undertaking to correct the design defects.
Beck has not shown that the trial court erred in applying the rule that an owner of premises is not liable to an employee of an independent contractor for injuries arising from an open and obvious defect. The trial court correctly granted summary judgment for the Olin defendants.
Amrich's argument, that it was Ceilcote's subcontractor and therefore Ceilcote was responsible to Amrich for the safety of the shelter, is well taken. Southern Minerals Co. v. Barrett,281 Ala. 76, 199 So.2d 87 (1967). Amrich built the shelter according to specifications and directions provided by Olin and Ceilcote. If Beck had shown that negligent construction by Amrich caused the accident, summary judgment might not be appropriate. The record shows no factual question as to negligent or faulty construction by Amrich, however, so summary judgment was properly granted on Amrich's motion.
The summary judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER and ADAMS, JJ., concur.
EMBRY, J., concurs in the result.
[1] The distinction between Ceilcote and Corrosion Proof Construction is not material for our purposes; in most cases we shall refer to Beck as an employee of Ceilcote.