Mary Katherine WALDEN, etc., Plaintiff-Appellee,

v.

UNITED STATES STEEL CORPORA-TION, a corporation, et al., Defendants,

United States Steel Corporation, a corporation, Defendant-Appellant.

No. 83–7472.

United States Court of Appeals, Eleventh Circuit.

May 6, 1985.

John T. Roach, Jr., Birmingham, Ala., for plaintiff-appellee.

Thomas J. Whyte, Thomas A. Smock, David J. Laurent, Pittsburgh, Pa., for American Mining–amicus.

Before VANCE and ANDERSON,[1] Circuit Judges, and PITTMAN *, District Judge.

PER CURIAM:

United States Steel Corporation (U.S. Steel) appeals from an adverse jury verdict in a suit by Mary Katherine Walden for the wrongful death of her husband Harold. At the time of his death, Harold Walden was employed by Cowin & Co. (Cowin), an independent contractor hired by U.S. Steel to do construction and excavation work at U.S. Steel's Oak Grove coal mine. The district court submitted the case to the jury on three separate negligence theories and they returned a general verdict in Mrs. Walden's favor. U.S. Steel filed a motion for judgment n.o.v. asserting that it was entitled to a directed verdict on each of the negligence theories. The district court denied the motion. 567 F.Supp. 1443. We affirm the district court's denial of the motion as to two of the theories and certify the third to the Supreme Court of Alabama for clarification of the duty owed by U.S. Steel to employees of this independent contractor.

Harold Walden was killed in 1974 in an accident during the construction of U.S. Steel's Oak Grove coal mine. Walden was employed by Cowin, which had been hired by U.S. Steel to sink a fan shaft and an elevator-ventilation shaft for the mine. U.S. Steel provided plans and specifications for the shafts to Cowin and the other contractors that bid on the job. The "bid package" given the contractors bidding on

William C. Knight, Birmingham, William F. Murray, Jr., J. Ross Forman, Birmingham, Ala., for defendant-appellant.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, Tony G. Miller, Birmingham, Ala., for amicus Ala., et al.

G. Stephen Parker, Atlanta, Ga., for amicus, Southeastern Legal Foundation, Inc.

---

1. Honorable R. Lanier Anderson had disqualified himself in this case. The decision is entered by a quorum of the court.

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

the elevator-ventilation shaft included a geologic survey and a construction drawing showing the desired dimensions and shape of the finished shaft, but no other construction specifications. Cowin's contract with U.S. Steel specifically delegated all responsibility for safety at the construction site to Cowin. Cowin prepared the construction plans, including the method for sinking the shaft, which were submitted by U.S. Steel to the Mining Enforcement and Safety Administration (MESA) for approval. The plans identified both U.S. Steel Safety Director Walter Fleming and Cowin Safety Director Richard Gallentine as the principal officers in charge of health and safety.

Cowin sank the shaft by drilling holes into the ground and inserting and discharging dynamite charges to fragment the rock. The resulting debris, called "muck," was loaded into a bucket attached to a hoist for removal at the top of the shaft. Cowin used the two-bucket hoist method. Workmen loaded one bucket on the floor of the shaft while another bucket was being hoisted to the top. Once the elevator shaft reached the coal seam (approximately 1100 feet down) Cowin began constructing horizontal headings (tunnels). As required, Cowin submitted a new plan to MESA detailing the method for removing coal and muck from the headings. Although the plan stated that a conveyor feeder would be used to load the buckets at the bottom of the shaft, Cowin chose to load the buckets with an EIMCO 630 loader instead. Because Cowin's EIMCO 630 loader was too tall to permit loading in the horizontal headings, workers were forced to remain in the shaft underneath the bucket being hoisted while loading the other bucket. The hoist did not have an automatic brake or any other safety mechanisms and Cowin did not install a safety trap door or any other safety device in the shaft.

John Allen, U.S. Steel's Project Engineer, was at the site continuously from March 1973, monitoring the contractors' progress and their compliance with the plans. When Cowin began constructing the headings, he was involved in day-to-day planning to determine the best method for extracting the coal and connecting the shafts. He was in the shaft almost daily to check the work. Allen had an intimate knowledge of the federal and state regulations for mining and mine construction. He was aware of the safety requirements for the hoist being used by Cowin and he had checked all the equipment on the site at one time or another. He made suggestions to contractors from time to time for improving the operation and safety at the site. At one point he asked Cowin to tighten the ventilation curtain in the bottom of the mine shaft to prevent the build-up of noxious gases, and Cowin did so. Cowin always promptly complied with Allen's suggestions.

On May 23, 1973, Herbert Wilson was killed at the Oak Grove site when the brakes on a hoisting mechanism failed and a three-ton bucket of muck fell back down the fan shaft on top of him. Walter Fleming of U.S. Steel reported the accident to MESA. MESA investigated the accident and in the requirements section of its report directed that "[w]orkmen shall not work directly beneath a bucket being hoisted or lowered." No changes were made in the plans or construction method after Wilson's death. Allen knew of the citations issued by MESA after the accident and was aware that Cowin nevertheless continued its excavation efforts without complying with the plan that had been submitted to and approved by MESA.

On April 8, 1974, less than a year after Wilson's death, Harold Walden was killed at the bottom of the elevator-ventilation shaft. The bucket of coal being hoisted came up too high out of the shaft and hit the hoist frame at high speed. The steel hoist cable broke and the bucket fell back down the shaft, crushing Walden.

Walden's wife brought a wrongful death action against U.S. Steel based on several theories of liability. The district court submitted the case to the jury on the following three negligence theories: (1) that U.S. Steel was allegedly negligent in its design, plans, and specifications for the Oak Grove mine; (2) that U.S. Steel was allegedly neg-

ligent in its inspection of the equipment used where Walden was killed, after voluntarily undertaking safety inspections; and (3) that U.S. Steel was allegedly negligent in failing to warn of dangers at the site and in providing a safe work place for Walden as the employee of an independent contractor on U.S. Steel's property who was engaged in intrinsically dangerous activity.

The jury returned a general verdict in favor of the plaintiff. U.S. Steel appeals, assigning error to the trial court's refusal to grant a directed verdict or judgment n.o.v. on each claim. We will address each theory in turn.

■■■ In reviewing the denial of a motion for judgment n.o.v., this court is obligated to consider all the evidence, not just the evidence supporting the non-moving party's case, in the light most favorable to the non-moving party. The question should be left to the jury's judgment if there is substantial evidence that would allow reasonable people to reach different conclusions. *See Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). Under this standard, the verdict on the negligent plans and negligent voluntary inspections theories must be affirmed. It was not unreasonable for the jury to conclude that U.S. Steel's submission of the original plans and specifications, coupled with its day-to-day participation in planning the extraction of coal from the headings, constituted sufficient involvement to give rise to a duty. It was also well within the jury's province to decide that the failure to provide for any safety devices on the hoist or in the shaft constituted negligence.

■■■ Under Alabama law, once a person voluntarily undertakes safety inspections, he must act as a reasonably prudent person regardless of whether he originally intended to assure the safety of anyone other than himself. *See Beasley v. MacDonald Engineering Co.*, 287 Ala. 189, 192–94, 249 So.2d 844, 846–48 (1971). The jury would be justified in concluding that U.S. Steel's employees at Oak Grove voluntarily undertook inspections. Project Engineer Allen was always at the site and in the

shaft nearly every day. He had made suggestions for improvements to Cowin and he had ample opportunity to observe the hoisting operation and equipment. Although U.S. Steel presented contrary evidence on both issues, this court cannot substitute its judgment for the jury's decision unless it is clear that no reasonable people could have come to such a verdict. In this case substantial evidence supports the jury's conclusions, and they should not be disturbed.

The third theory, based on U.S. Steel's duty as owner/operator of a mine to employees of its independent contractor, is less readily resolved. The trial court charged the jury that the general rule in Alabama is that a landowner owes no duty to the employees of an independent contractor. The court further explained that an exception to the rule existed "where the work is of such kind or class that the doing of it, however carefully or skillfully performed, is necessarily and intrinsically dangerous." *Beck v. Olin*, 437 So.2d 1236 (Ala.1983), seems to indicate, however, that even if there is an exception to the rule for intrinsically or inherently dangerous activities, the landowner can delegate that duty by contract to the independent contractor.

Several factors combine in this case to complicate the interpretation of Alabama law. U.S. Steel employees were at the site constantly and were continuously involved in planning during the final stages of construction. Cowin was mining coal for U.S. Steel during the construction of the headings. Both federal and state law place a burden on mine owners and operators to comply with specific safety standards. The minimum safety precautions for hoisting operations were not used in the shaft at Oak Grove. The jury was also allowed to consider whether or not the mine shaft excavation was a "necessarily and inherently dangerous" activity. U.S. Steel argues that, as a matter of Alabama law, neither mining nor mine construction is an intrinsically or inherently dangerous activity. We have found no cases which deal with this type of excavation.

We find that the issue of U.S. Steel's duty is controlled by Alabama law and that there are no clear precedents governing the circumstances of this case. Because the jury returned a general verdict, this court must affirm that all three theories were properly submitted to the jury to sustain the court below. Failure of any one mandates a new trial in the district court. *See King v. Ford Motor Co.*, 597 F.2d 436, 439 (5th Cir.1979). This question thus controls the outcome of this appeal. Because there are no clear controlling precedents in the decisions of the Alabama Supreme Court, we certify this question to the Alabama Supreme Court under Rule 18 of the Alabama Rules of Appellate Procedure.

AFFIRMED IN PART. REMAINING QUESTION CERTIFIED TO THE ALABAMA SUPREME COURT.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO RULE 18, ALABAMA RULES OF APPELLATE PROCEDURE.

(1) *Style of the Case*

The style of the case in which this certificate is made is Mary Katherine Walden, etc. Plaintiff-Appellee, versus United States Steel Corporation, a corporation, et al., Defendants, United States Steel Corporation, a corporation, Defendant-Appellant, Case No. 83–7472, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Alabama.

(2) *Statement of Facts*

The pertinent facts are discussed above in the opinion.

(3) *Questions to be Certified*

A. Assuming that mine construction is an intrinsically or inherently dangerous activity, does the owner/operator of a coal mine owe a duty to employees of an independent contractor hired to excavate the mine shafts to warn of dangers on the premises and provide a safe work place?

B. Is a jury finding that this mining and mine excavation were intrinsically or inherently dangerous precluded by Alabama law?

The particular phrasing used in the certified questions is not to restrict the Supreme Court's consideration of the issues in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given. *See Martinez v. Rodriquez*, 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The clerk of this court is directed to transmit this certificate, as well as the briefs and record filed with the court, to the Supreme Court of Alabama, and simultaneously to transmit copies of the certificate to the attorneys for the parties.