This is an appeal of a summary judgment in favor of the defendants. The issues are whether a contractor and subcontractor may be held liable for the negligence of an independent contractor, and whether the plaintiff was contributorily negligent as a matter of law.
 FACTS
In 1985, the University of North Alabama ("U.N.A.") requested bids for renovation of the University Fine Arts Complex. A contract was awarded to Sequoia Construction Company. Sequoia subcontracted the entire job to American Restoration, Inc., which, in turn, subcontracted the job to Quality Waterproofing. ("Quality") To perform the job, Quality had to remove the old paint from the building. Quality bought a highly caustic paint-removing chemical named PC X-25 from Power Cleaning Contractors, a chemical supplier. Power Cleaning also supplied a garden-type sprayer to apply the chemical. Power Cleaning purchased the chemical from Hometown Manufacturing Company. After Quality had begun working on the job, 15-year old Jason Jones was hired. On his *Page 998 
eighth day of employment, Jones was applying PC X-25 to a ceiling with the sprayer provided by Power Cleaning. All employees were required to wear face shields while spraying the chemical. The face shield the appellant was wearing misted over, so he removed it and continued spraying the ceiling. The nozzle of the sprayer malfunctioned, and a drop of the chemical fell from the ceiling and into the appellant's eye. The drop was potent enough to blind him in that eye.
On October 18, 1988, the trial court entered summary judgment on behalf of Power Cleaning, American Restoration, Sequoia, and the architectural firm of Smith, Cranert, Tomblin and Associates. The trial court made the summary judgment final pursuant to Rule 54(b). This appeal was taken with respect to Power Cleaning, American Restoration, and Sequoia. The individual managers and owners of Quality remain in the suit, as does Liberty Mutual Insurance Company.
 I. DUTY
The following specifications were incorporated into the contract between U.N.A. and Sequoia:
 "The Contractor shall take all necessary precautions for the safety of employees on the work and shall comply with all applicable provisions of federal, state, and municipal safety laws and building codes to prevent accidents or injury to persons on or about or adjacent to the premises where the work is being performed. He shall properly maintain at all times, as required by conditions and progress of the work, all necessary safeguards for the protection of workmen and the public. . . ."
It is clear from the contract that the contractor, Sequoia, had a specific duty to provide a safe workplace for the workmen. This duty did not end once the work had been subcontracted. Section 40 of the contract between U.N.A. and Sequoia speaks to the liability of the contractor for the work of subcontractors:
 "The Contractor shall be fully responsible to the Owner for the acts and omissions of Subcontractors, and of persons employed by them, as he is for the acts and omissions of persons directly employed by him."
The record indicates that after they entered into a contract, American Restoration assumed Sequoia's role of the contractor with responsibility for restoring the complex. When American Restoration awarded the contract to Quality Waterproofing, it was requiring Quality Waterproofing to do the entire job, the same job that it had contracted to do for Sequoia. Thus, the relationship between American Restoration and Sequoia appeared to be that of contractor and subcontractor. Consequently, the provisions of Section 40 of the contract between U.N.A. and Sequoia would apply to American. Regardless of whether Sequoia and American's roles were active or passive, their liability is clearly established by the contract.
Appellees Sequoia and American Restoration argue that they are not liable for the acts of Quality. Because they neither exerted control or exercised supervision over Quality, Sequoia and American Restoration contend that Quality must be an independent contractor. In Alabama, the general rule is that employers are not liable for the tortious acts committed by independent contractors. General Finance Corp. v. Smith,505 So.2d 1045, 1047 (Ala. 1987). Assuming, arguendo, that Quality was an independent contractor, we must examine the working conditions at the U.N.A. job site before we can determine if the contractor and subcontractor were relieved of liability.
The fact that PC X-25 was very dangerous has been admitted by all the parties to this appeal. The damage done by one drop of the chemical is a testament to its potency. As a general rule, a contractor must accept responsibility for the negligent acts of his independent contractor if the independent contractor is engaging in inherently or intrinsically dangerous acts.Boroughs v. Joiner, 337 So.2d 340, 342 (Ala. 1976). *Page 999 
Most jurisdictions have been reluctant to give a precise definition to "inherently or intrinsically dangerous acts." However, if the work was of a nature such that "injury would probably result . . . unless it was performed with due care," the work will be considered "inherently or intrinsically dangerous." 41 Am.Jur.2d, Independent Contractors, § 41 (1968). There is no doubt that the application of PC X-25 would fall within the ambit of this definition. As stated above, all parties have readily admitted the destructive effects of this chemical. We conclude that the application of PC X-25 was "inherently and intrinsically dangerous," and, therefore, that the contractor must assume responsibility for the negligent acts of its independent contractor, Quality.
This Court has stated "that one who by his contract or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of the employment of such contractor." Dixie Stage Lines v. Anderson,222 Ala. 673, 675, 134 So. 23, 24 (1931).
The contract between U.N.A. and Sequoia stated that the contractor would be responsible for the "acts and omissions of Subcontractors." It also states that the contractor shall "take all necessary precautions" to provide a safe workplace for the workers.
Section 04500 of the modifications to the contract stated that PC X-25, manufactured by Power Cleaning, would be the detergent/degreaser of choice. Thus, the appellees were aware that Power Cleaning would be providing the chemical. In addition, Power Cleaning provided a sprayer that could also be used in a garden to spray plants. In light of the corrosive effect of the chemical and the apparent malfunction of the sprayer before the accident, the use of a garden sprayer to apply so dangerous a chemical seems, at the very least, questionable. Whether the sprayer was adequate, however, is not for this Court to decide. However, the contractor and subcontractor's acquiescence to its use, and Power Cleaning's role in providing the sprayer, merit further consideration. Section 01710 of the modifications to the contract states that equipment "compatible" with the work to be done is required. Whether the garden sprayer used by the appellant fits this requirement is a jury question.
 II. CONTRIBUTORY NEGLIGENCE
The trial court ruled that, as a matter of law, the appellant's negligence contributed to his injury and, thereby, barred recovery. By his own admission, the appellant stated that his eye would have been saved had he been wearing his facial shield. It is not clear, however, that the appellant knew that the chemical could cause such damage at the time he was injured.
When a 15-year-old child is working on a job as fraught with peril as the one before us, we will not hold the child to the same standard of responsibility as an adult. The legislature recognized that there are certain positions of employment from which a child under 16 should be barred. The Child Labor Act, Code 1975, § 25-8-2(6), prohibits children age 15 and under from employment where dangerous acids are used.
For a court or jury to find contributory negligence, it must be shown that the plaintiff had knowledge of the danger and appreciated the danger under the circumstances and, yet, put himself "in the way of danger." Wilson v. Alabama Power Co.,495 So.2d 48, 49 (Ala. 1986). To apply this standard to a child, the Court must examine the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of the child. See, Lyle v. Bouler, 547 So.2d 506 (Ala. 1989).
It is unclear from the record whether the appellant was properly informed of the dangers and whether he understood the potential harm that could result from the chemical. In order for the appellant to be found contributorily negligent as a matter *Page 1000 
of law, he must have acted in a manner so negligent that reasonable minds could not disagree as to his negligence.Elba Wood Products, Inc. v. Brackin, 356 So.2d 119, 124 (Ala. 1978). The record before this Court could easily lead reasonable minds to differ as to whether the elements of contributing negligence were met.
Accordingly, we reverse summary judgment as to all appellees and remand this action for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.