**Leonardo RAMIREZ, Plaintiff,**

v.

**ALABAMA POWER COMPANY, Defendant.**

Civ. No. 94–D–1095–S.

United States District Court, M.D. Alabama, Southern Division.

Aug. 22, 1995.

1539

Edward M. Price, Jr., Elizabeth B. Glasgow, Dothan, AL, for plaintiff.

Donald R. Jones, Jr., Walter J. McCorkle, Jr., Montgomery, AL, for defendant.

### *MEMORANDUM OPINION*

DE MENT, District Judge.

Before the court is defendant Alabama Power Company's motion for summary judgment filed March 31, 1995. The plaintiff responded in opposition on June 15, 1995, to which the defendant replied on June 26, 1995. After careful consideration of the arguments of counsel, the relevant case law and the

record as a whole, the court finds that the defendant's motion is due to be granted.

## JURISDICTION AND VENUE

This court has subject-matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332, as there exists complete diversity between the parties and the amount in controversy exceeds $50,000. Venue is proper under 28 U.S.C. § 1391, and the parties do not contest personal jurisdiction.

## SUMMARY JUDGMENT STANDARD

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

## FINDINGS OF FACT

This is a premises liability action. The issue is whether defendant Alabama Power Company ("APCo"), as a premises owner, is liable for injuries sustained by plaintiff Leonardo Ramirez ("plaintiff"), who worked for an independent contractor hired by APCo. The plaintiff was preparing to paint a steel transmission tower owned by APCo when he received an electric shock from an energized wire, causing him to fall approximately sixty feet to the ground.

At all material times to this lawsuit, the plaintiff was employed by Public Utilities Maintenance, Inc. ("PUMI"), a New York-based corporation whose business includes maintaining and painting various structures and equipment for electric utility companies. PUMI performs its services as an independent contractor throughout North America and South America.

On December 1, 1993, APCo hired PUMI to paint its steel transmission towers. The steel transmission towers specified in the contract are approximately sixty-feet high and support transmission lines running from Pinckard, Alabama to the Alabama–Florida border. The transmission lines consist of two overhead shield wires and three 115,000–volt power lines. The overhead shield wires are on insulators for telecommunications use and also act as lightning protection.

Under the contract, PUMI agreed to conduct all necessary safety inspections and to provide tools, equipment and qualified workers. APCo relinquished "any right to control the methods or manner of performance of the work by the Contractor." Contract at ¶ 14 (attached to APCo's Mot. Summ. J.). The contract further provided that all APCo's "equipment and structures ... upon which work is to be performed may be energized with electric power at all times up to a maximum voltage of 500,000 volts." *Id.* at ¶ 5. In an affidavit submitted by APCo, PUMI's president (Emmanuel Bortolis) states that he knew all APCo's electrical lines would "remain energized" during the perfor-

mance of the contract. Bortolis' Aff. at 1 (attached to APCo's Mot. Summ. J.).

Bortolis further assured APCo that his employees "were skilled and trained in working around energized electrical equipment and that they frequently painted transmission towers while the lines were energized." *Id.* at 2. For example, the plaintiff testified that at the time of the accident, he had painted "electrical towers, bridges and antennas" for five years and had painted many towers while the lines were energized. Pl.'s Dep. at 44–45. APCo states that it selected the services of PUMI based on Bortolis' assurances. Water's Aff. at 1 (attached to APCo's Mot. Summ. J.). According to APCo, representatives of PUMI also said that they would warn the employees of the hazards of working near energized lines and would provide the necessary safety equipment. *Id.*

On December 6, 1993, PUMI commenced work under the contract. That morning, the plaintiff and other employees of PUMI met with one of APCo's employees, Wayne Gilmore ("Gilmore"), who showed them the location of the transmission towers. Gilmore's Dep. at 14–15 (attached to APCo's Mot. Summ. J.). The plaintiff did not take orders from any APCo employee but received instructions from John Andres ("Andres"), PUMI's ground foreman.[1] The plaintiff stated that when he arrived at the jobsite,

> there was several people waiting—I believe from Alabama Power Company. While John Andres ... was talking to them, we start to get everything ready to paint the towers. When we had everything ready, John Andres separated us in groups of three or four persons for each tower. He gave us instructions about the job, he asked us to do a good job, nice and clean, he never said anything about the ground wire could have electricity.

Pl.'s Answer to Interrog. No. 49 (attached to APCo's Mot. Summ. J.). The plaintiff and two of the three PUMI employees in his group are from Paraguay, speak primarily Spanish and understand very little English. Andres is Greek and is not fluent in Spanish.

As the plaintiff climbed the first transmission tower and positioned himself to begin painting, he unintentionally touched one of the overshield wires, received an electrical shock and fell from the tower.[2] The plaintiff sustained injuries including multiple broken bones, internal damage and cerebral concussion. It is undisputed that the overshield wires carried voltage that day and were not grounded and/or insulated to prevent an electrical shock upon contact. Thereafter, the plaintiff commenced this diversity action seeking recovery from APCo on theories of negligence and wanton misconduct. After conducting discovery, APCo filed its motion for summary judgment as to all claims in the complaint.

In opposing summary judgment, the plaintiff has submitted the affidavit of his expert, Roy Martin ("Martin"), who is experienced in the field of electrical engineering. Martin gave his opinion that the "insulated static wires" should have been grounded and that APCo did not comply with industry standards, in part, because it failed to have "qualified electrical persons to ensure the safety of the painters." Martin's Aff. at VII. Martin further asserts that due to the language barrier between PUMI's workers and APCo's employees, "it is substantially impossible for the painters to have been adequately warned about the insulated static wires." *Id.* at VIII and IX. Martin concludes with this statement:

> Based on my review of the materials ..., together with my experience, it is my opinion that the fall and the injuries sustained by [the plaintiff] were the foreseeable result of APC[o]'s failure to provide adequate supervision, failure to ground the static wires, failure to adequately warn of the danger of static wires that were not grounded, failure to ensure that PUM[I] employees were adequately trained and given adequate safety equipment, and failure to abide by industry standards in ask-

---

1. While not an employee of PUMI, Andres was working on behalf of PUMI. Specifically, Andres agreed to serve as foreman as a favor to the owner of PUMI.

2. The plaintiff refers to the overshield wire as both a "static wire" and a "ground wire."

ing [the plaintiff] to work under such inherently dangerous conditions.

*Id.* at XI (brackets supplied).

At the time of the accident, there were two APCo employees nearby, Sammy Nolan ("Nolan") and Gilmore.[3] They were present to ensure contract compliance, to show the painters the location of the transmission towers, to act as a liaison between the painters and the adjoining landowners, and to show the painters the route to take across adjacent lands when moving from tower to tower. *See* Nolan's Dep. at 12; Gilmore's Dep. at 10. Furthermore, it is undisputed that APCo's personnel did not supervise the painters, instruct them on how to paint or give any safety instructions such as the proper method to ascend or descend a tower or how they should position themselves when painting the towers. Moreover, APCo had no control over the number of painters present, the number of days to be worked or the number of hours to be worked each day.

## DISCUSSION

The plaintiff has sued APCo for negligence and wanton misconduct claiming that APCo (1) breached its duty to provide him a safe work place, (2) failed to perform safety inspections at the work site, and (3) failed to warn the plaintiff of the danger of working around energized wires. The court will address each argument in turn.

### I. Failure to Provide a Safe Work Place

■ The first issue is whether APCo, the owner of the transmission towers, owed a legal duty to the plaintiff, as an employee of an independent contractor, to provide a safe work environment. The parties agree that generally, a premises owner owes no duty to an employee of an independent contractor with respect to work conditions. *See Kendrick v. Alabama Power Co.*, 601 So.2d 912 (Ala.1992); *Alabama Power Co. v. Smith*, 409 So.2d 760 (Ala.1981).

■ In *Weeks v. Alabama Elec. Co–Op., Inc.*, 419 So.2d 1381 (Ala.1982), the Supreme Court of Alabama set forth the controlling law:

The[ ] cases firmly establish the general rule that a premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract. "The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work." *Thompson v. City of Bayou La Batre*, 399 So.2d [292] at 294 [ (Ala.1981) ]; *Hughes v. Hughes*, 367 So.2d [1384] at 1386 [ (Ala.1979) ]. "When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant." 399 So.2d at 294.

A master-servant relationship is *not* created, however, when the owner merely retains the right to supervise or inspect work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications, and retains the right to stop work that is not properly done. *Pate v. United States Steel Corp.*, 393 So.2d [992] at 995 [ (Ala.1981) ].

*Id.* at 1383.

■ Hence, based on *Weeks*, retention of control is the one factor that can change the relationship and legal duties owed between a premises owner and an independent contractor. Alabama courts examine two areas of evidence to determine whether a premises owner controls the work performed by an independent contractor: the terms of the contract between the parties and the conduct of the premises owner. *Pugh v. Butler Telephone Co., Inc.*, 512 So.2d 1317 (Ala.1987). Hence, to overcome summary judgment, the plaintiff must raise genuine issues of material fact by offering "any evidence tending to establish that [APCo] retained this control, either by contract or by its actions...." *Weeks*, 419 So.2d at 1383 (brackets supplied). The court finds for the following reasons that the plaintiff has failed to do so.

First, the court carefully has reviewed the contract between APCo and PUMI and finds

---

**3.** Nolan and Gilmore have been employed with APCo for twenty-four years and thirty years, respectively. Both presently work as distribution specialists.

that its terms unambiguously establish that APCo did not retain or reserve the right to control the "manner" in which the plaintiff performed his work. Instead, APCo merely reserved the right to supervise and inspect the work to assure that PUMI's employees complied with the terms of the contract. The contract provides, in pertinent part, as follows:

4. The Contractor will furnish adequate numbers of trained, qualified and experienced personnel and appropriate equipment in good condition to perform the work requested by the Company. Such personnel shall be skilled and properly trained to work on and in the vicinity of energized electrical equipment, structures and lines, and who are fully cognizant of the hazards involved. Contractor shall furnish all rubber goods, grounds, hot sticks and any other similar equipment needed to perform work on energized electrical equipment or structures. Contractor agrees to use all diligence to the limit of his ability, to furnish additional personnel and equipment when requested by the Company.

. . . . .

13. The Company reserves the right, but shall not be obligated, to appoint inspectors to follow the progress of the work with authority to suspend work not in accordance with the Contract. Acceptance or approval by the inspector shall in no event be deemed to constitute final acceptance of same by the Company. The inspection by the Company's inspector shall not relieve the Contractor of any responsibility for the proper performance of the work. Inspection by the Company's inspectors shall not be deemed to be supervision by the Company of the Contractor, its agents, servants, or employees, but shall be only for the purpose of assuring that the work complies with the Contract. All persons employed by the Contractor in performance of any work under this Contract shall be employees of the Contractor and shall not be deemed to be employees of the Company for any purpose whatsoever.

. . . . .

14. *The Company does not reserve any right to control the methods or manner of performance of the work by the Contractor. The Contractor, in doing the work herein called for, shall not act as an agent or employee of the Company, but shall be and act as an independent contractor, and shall be free to perform the work by such methods and in such manner as the Contractor may choose, furnishing all equipment, and doing everything necessary to perform such work properly and safely, having supervision over and responsibility for the safety and actions of his employees, and control over and responsibility for his equipment. The Company may at all times have the right to have its authorized representative inspect the work, not for any purpose or reserved right of controlling the methods and manner of the performance of the work, but in order to assure that all work complies with the requirements of the Contract.*

Contract at ¶¶ 4, 13, 14 (emphasis supplied) (attached to APCo's Mot. Summ. J.).

Second, not only are the terms of the contract explicit as to the relationship between APCo and PUMI, but there also is no evidence that APCo, through its actions at the jobsite, retained any control over the work performed. In fact, it is undisputed that APCo did not instruct PUMI's employees on how to paint, did not supervise the work, did not offer any safety tips and did not provide any of the equipment and tools used. In addition, the court finds that the limited duties of Nolan and Gilmore, the only two APCo employees present at the jobsite, were merely supervisory in nature and, thus, do not change the relationship of independent contractor-premises owner to one of master-servant. Moreover, the plaintiff admits that he followed instructions, not from an APCo employee, but from John Andres, who was working on behalf of PUMI. *See* Pl.'s Answer to Interrog. No. 9 (attached to APCo's Mot. Summ. J.). In sum, the court finds that neither the terms of the contract nor APCo's actions raise a disputed factual issue that APCo retained control over the project.

In his response to APCo's motion for summary judgment, the plaintiff does not dispute APCo's assertion that it did not reserve the

right to control the manner in which PUMI painted the transmission towers. Instead, the plaintiff insists that APCo is liable under two exceptions to the general rule that an owner of premises owes no duty to provide a safe work place to an employee of an independent contractor. Specifically, the plaintiff seeks to invoke the "inherently dangerous activity" and "non-delegable duty" exceptions. For the following reasons, these arguments must fail.[4]

### A. "Inherently Dangerous Activity" Exception

■ Citing *Jones v. Power Cleaning Contractors,* 551 So.2d 996 (Ala.1989) and *Boroughs v. Joiner,* 337 So.2d 340, 342 (Ala. 1976), the plaintiff contends that painting electrical transmission towers is an inherently dangerous activity, and, as a consequence, APCo owed him a duty to maintain a safe work place. APCo contends that even if painting transmission towers with energized lines is an inherently dangerous activity, a premises owner is not liable for injuries sustained by an employee of an independent contractor, *absent retention of control over the performance of the independent contractor's work.* APCo cites *Procter & Gamble Co. v. Staples,* 551 So.2d 949, 953 (Ala.1989) in support of its position.

In *Procter & Gamble Co.,* the Supreme Court of Alabama states that cases where it has found that a premises owner owes no legal duty to provide a safe workplace usually involve an "outside party['s]" control over the injured employee's work:

> Generally speaking, those cases have arisen either where a subcontractor's injured employee has sought to charge the general contractor with the duty to provide a safe workplace, or where a general contractor's injured employee has sought to charge the premises owner with that duty. In those cases, we have required that the plaintiff prove that the defendant exercised control over job site and control over the manner in which the work was to be done, and prove either that the work was intrinsically dangerous or that the defendant had undertaken to provide safety on the jobsite. In many cases, defendants have proven by competent evidence either that they had no control over the jobsite or that they had no control over the manner in which the work was performed. In those cases, we have consistently refused to permit a finding of liability. The justification for this exception is obvious: the parties charged with providing a safe workplace are the ones who either have assumed or have been delegated the duty to do so, or who are in such a position that the jobsite functions as they command.

*Id.* at 953 (internal citations omitted) (emphasis supplied). Hence, no matter how dangerous the work is, the plaintiff also must show that APCo retained or exercised control over the painting of the transmission towers. As already discussed, the plaintiff has failed to offer any evidence showing that APCo retained any type of control over PUMI's work under the contract.[5]

Moreover, the court finds that the cases cited by the plaintiff are factually inapposite to the case at bar. In *Jones,* the issue was whether a general contractor could be held liable to the employee of an independent contractor for failure to maintain a safe work place. Applying the *Procter & Gamble Co.* analysis, the Supreme Court of Alabama found that application of paint remover on a construction site was inherently dangerous. The court then held the general contractor liable, because it also had retained control over the work by contracting with the premises owner to provide a safe work place. *Jones,* 551 So.2d at 999; *see also Pope v. City of Talladega,* 602 So.2d 890, 893 (Ala. 1992) (affirming summary judgment for premises owner against employee of independent contractor and distinguishing *Jones* on

---

**4.** The inherently dangerous activity and non-delegable duty exceptions are interconnected in that Alabama courts hold that in some instances, the duty to provide a safe workplace when an inherently dangerous activity is involved is non-delegable. The court, however, will separately address each exception.

**5.** APCo contends that the work performed by the plaintiff was not inherently dangerous. The court, however, need not address this issue, as the plaintiff has failed to raise a factual issue as to APCo's retention of control over the contract work, which is a necessary element for recovery under the inherently dangerous activity exception.

the grounds that liability there hinged on a "contractual obligation to provide a safe workplace").

Moreover, *Boroughs* involved the liability of a landowner for injury caused to an adjoining neighbor's land. There, the defendant-landowner hired an independent contractor for aerial application of pesticides (crop dusting). An adjoining landowner sued asserting that the pesticides drifted onto his land and contaminated his fish pond. The Supreme Court of Alabama held that crop dusting is an inherently dangerous activity, "and, therefore, the landowner cannot insulate himself from liability simply because he has caused the application of the product to be made on his land by an independent contractor." 337 So.2d at 343. In a later decision, the Supreme Court of Alabama recognized a distinction between a premise owner's duty owed to an employee of an independent contractor and *Boroughs,* which involved a duty owed to third party. *See Pope,* 602 So.2d at 893.

### B. "Non–Delegable Duty" Exception

■ The plaintiff's second argument— that APCo had a non-delegable duty to provide him with a safe work place—also is unpersuasive, because this argument likewise turns on whether APCo retained or exercised control over the manner in which the tower painting was performed. APCo cites *Beck v. Olin Co.,* 437 So.2d 1236 (Ala.1983), which is factually similar to the instant action. In *Beck,* a chemical manufacturer hired an independent contractor to apply protective liners to storage tanks, walkways and floors in its factory in order to prevent erosion from chemicals. The plaintiff, an employee of the independent contractor, sustained eye injuries from the chemicals while working on the premises. The plaintiff filed suit against the premises owner.

In affirming summary judgment for the premises owner, the Supreme Court of Alabama held that even though the work performed was inherently dangerous, the chemical manufacturer was not liable because the terms of the contract delegated the duty to provide a safe work place to the independent contractor. *Id.* at 1239; *see also Walden v. United States Steel Corp.,* 759 F.2d 834, 837 (11th Cir.1985) (stating that *Beck* "seems to indicate ... that even if there is an exception

to the rule for intrinsically or inherently dangerous activities, the landowner can delegate that duty by contract to the independent contractor").

In the instant case, the court likewise finds that APCo effectively delegated any duty to provide a safe work place to PUMI by specifying in the contract as follows:

The Contractor [PUMI] will furnish adequate numbers of trained, qualified and experienced personnel ... to perform the work requested by the Company [APCo]. Such personnel shall be skilled and properly trained to work on and in the vicinity of energized electrical equipment, structures, and lines, and who are fully cognizant of the hazards involved[;]

. . . . .

The Contractor shall accept all equipment and structures of the Company as found, and will make its own inspection for the purpose of determining the hazards incident to working thereon or thereabout and will adopt suitable precautions and methods for the protection and safety of its employees[;] [and]

. . . . .

The Contractor, in doing the work herein called for, shall not act as an agent or employee of the Company, but shall be and act as an independent contractor ..., having supervision over and responsibility for the safety and actions of his employees....

Contract ¶¶ 4, 5, 14 (brackets supplied) (attached to APCo's Mot. Summ. J.).

Importantly, the plaintiff has not argued that the terms of the contract were inadequate to delegate the duty to PUMI to provide a safe work place. The plaintiff does argue, however, by way of his expert, that APCo should be held liable, in part, because it failed to provide PUMI with a copy of its Employee Safety and Health Manual. The court is not persuaded by this argument, particularly since PUMI's president assured APCo that his employees were trained to work in close proximity with energized wires. Moreover, APCo specifically warned PUMI in the contract about the very condition which allegedly caused the plaintiff's fall:

"[A]ll equipment and structures of [APCo] upon which work is to be performed may be energized with electric power at all times up to a maximum voltage of 500,000 volts." *Id.* at ¶ 5.

■■■ The plaintiff also argues that APCo owed him a duty to insulate or ground the line with which he came into contact so as to prevent an electrical shock. The court finds that seeking to impose liability on APCo for failing to insulate is but another way to argue that APCo failed to provide a safe work place for the plaintiff, for it relates directly to the working conditions at the project site. The so-called duty to insulate is nothing more than recognition that under certain circumstances the standard of care is breached by the failure to insulate. The "duty" depends on the circumstances of each case, and is often premised on the proximity of lines to activity which may render injury reasonably foreseeable. *See Alabama Power Co. v. Alexander,* 370 So.2d 252 (Ala.1979). Significantly, the Supreme Court of Alabama has never found that an electric company owed a duty to insulate to an employee of an independent contractor retained for the specific purpose of performing maintenance on equipment owned by the company. Moreover, the plaintiff has cited no statute, municipal ordinance, or industry regulation or standard which requires APCo to insulate the line that the plaintiff touched.

The undisputed facts in this case are that APCo contracted with PUMI to paint, among others, the electrical tower from which the plaintiff fell, while the lines were energized. *See* Contract ¶ 5; Bortolis' Aff. APCo was assured, both orally and contractually, that PUMI's employees possessed the requisite skill and training "to work on and in the vicinity of energized electrical equipment, structures, and lines" and were knowledgeable of the hazards involved. *Id.* APCo further warned PUMI, both in writing and orally on the morning of the plaintiff's fall, that "all equipment and structures of the company upon which work is to be performed may be energized with electric power at all times up to a maximum voltage of 500,000 volts." *See* Contract ¶ 5; Nolan Dep. 21; Andres Dep. 24, 29–30. As discussed *infra,* if this warning was not effectively communi-

cated to the plaintiff by PUMI, APCo is not at fault.

In sum, the court finds that in the absence of retention by APCo of control over the manner in which PUMI performed its work, APCo may not be held liable for a failure to provide a safe work environment to the plaintiff. Accordingly, the court finds that summary judgment is due to be granted as to the plaintiff's claim that APCo failed to provide him with a safe work environment.

## II. *Failure to Perform Safety Inspections*

■■■■ The gist of the plaintiff's second claim is that APCo failed to inspect the job-site to ensure that the plaintiff was working in a safe environment and had adequate equipment and tools. The court finds the plaintiff's argument without merit. It is undisputed that APCo had no contractual obligation to perform any safety inspections. Rather, PUMI was supposed to ensure the safety of its workers. Specifically, the contract provides that the "[t]he Contractor shall accept all equipment and structures of the Company as found, and will make its own inspection for the purpose of determining the hazards incident to working thereon or thereabout and will adopt suitable precautions and methods for the protection and safety of its employees." Contract at ¶ 5 (attached to APCo's Mot. Summ. J.).

■■■ The only other way to hold a premises owner liable under this theory is where the premises owner voluntarily undertakes to inspect the work environment and does so negligently. To succeed on this claim, the plaintiff must show that (1) APCo had undertaken to inspect the site, particularly the area in which the injury-causing hazard is located, (2) that APCo performed the inspection negligently, and (3) that such negligence proximately caused the plaintiff's injuries. *Alabama Power Co. v. Williams,* 570 So.2d 589 (Ala.1990); *Columbia Engineering Int'l Ltd. v. Espey,* 429 So.2d 955, 965 (Ala.1983). The record is devoid of any evidence raising a genuine issue of fact as to any of the elements. Accordingly, because APCo had no contractual obligation to perform a safety inspection and did not voluntarily do so,

APCo is entitled to summary judgment on this claim.

### III. Failure to Warn of Hidden Dangers

■ A premises owner cannot completely escape liability by hiring an independent contractor, as the premises owner owes a duty to warn of hidden dangers of which the premises owner knows. The plaintiff's failure-to-warn claim is governed by *Armstrong v. Georgia Marble Co.*, 575 So.2d 1051 (Ala. 1991); *Pickett v. United States Steel Corp.*, 495 So.2d 572 (Ala.1986); and *Glenn v. United States Steel Corp.*, 423 So.2d 152 (Ala. 1982). In *Glenn*, the Supreme Court of Alabama stated:

> This court has defined the duty owed by an owner of premises to an independent contractor on a number of occasions. "[A]n owner of premises is not responsible to an independent contractor for injuries from defects or dangers which the contractor knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor and if he does not do this, of course, he is liable for resultant injury. *Crawford Johnson & Co. v. Duffner*, 279 Ala. 678, 189 So.2d 474 (1966)." *Veal v. Phillips*, 285 Ala. 655, 657–658, 235 So.2d 799 (1970). This rule applies equally to those employees of the independent contractor on the premises engaged in work in furtherance of performing the contract.

423 So.2d at 154.

■ Moreover, the court in *Armstrong* confirmed the long standing rule that a premises owner fulfills his or her duty to warn by warning a plaintiff's employer of any danger. The *Armstrong* court stated:

> In *Crawford Johnson & Co. v. Duffner*, 279 Ala. 678, 189 So.2d 474 (1966), this Court held that any duty on the part of the defendant to warn of dangers in the workplace would ordinarily be discharged by giving notice of the dangers to all supervisory personnel of the plaintiff. In that case, the plaintiff's employer had contracted with the defendant to repair a boiler. The plaintiff's employer knew of the defective switch on the boiler but failed to warn the plaintiff. This Court held that the defendant could not be held liable to the plaintiff because it had discharged its duty by warning the plaintiff's employer of the danger.

> Once a third party discharges its duty by warning the employer, the duty of warning each of the employer's individual employees falls to the employer. "[T]he owner or occupier of particular property has a duty to warn the employees of an independent contractor who has undertaken to do work on the property, of dangers that are hidden on or inhere in that property, and ... this duty is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger." *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 758 (5th Cir.1960) cert. denied, 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61 (1960); see, also, *Cook v. Branick Manufacturing, Inc.*, 736 F.2d 1442 (11th Cir.1984).

575 So.2d at 1053.

■ Here, the court finds APCo fulfilled any duty it may have had to warn the plaintiff that the power lines would be energized. It is undisputed that APCo informed the president of PUMI, orally and by contract, that all APCo's lines may be energized. To reiterate, the contract stated:

> 5. * * * The Contractor understands and acknowledges the warning that *all* equipment and structures of the Company upon which work is to be performed may be energized with electric power at all times up to a maximum voltage of $500,000 volts. Contractor further agrees to obtain from each of its employees, *PRIOR* to their first entrance upon the premises or structures of the Company, a signed statement acknowledging that such employee has been warned that *all power line conductors* and the entire substation and related equipment and structures, in the area in which such person will work, are energized with electric power sufficient to cause death or injury. If the Contractor fails to secure such statement, the Contractor shall indemnify and hold the Company, and its agents, servants and employees harmless from all loss, damage or liability resulting from claims, demands, suits or actions of

every kind against the Company for injury to or death of the employee of Contractor because of such failure.

Contract at ¶ 5 (emphasis supplied) (attached to APCo's Mot. Summ. J.).

In addition, on the morning of the plaintiff's fall, APCo's employee (Nolan) warned PUMI again of this condition. The following is an excerpt from Nolan's deposition:

Q. Did you review or provide any information that you felt would be important to them [the painting crew members] as they were working on these towers?

A. As they were working on them?

Q. No. Before they started working on them?

A. Yes.

Q. Tell me what information you provided to them.

A. I ... asked their supervisor [John Andres] did they all understand that all the lines were energized.

Q. Okay. And what did he say?

A. He repeated it—or he talked to them. And he responded, "Yes."

Nolan's Dep. at 21.

Moreover, the plaintiff's own testimony indicates that John Andres, who was working on behalf of PUMI, warned the plaintiff that the lines were energized:

Q. Did Mr. Andres ask you whether you knew that the lines that you were going to be working around were energized?

A. Yes.

Q. And did you respond?

A. Did I respond to what?

Q. To his question about whether you knew that the lines that you were going to be working around were energized.

A. Yes.

Q. What did you tell Mr. Andres?

A. I don't remember.

Q. Did you understand when you began climbing that tower that the lines that you were going to be working around were energized?

A. Yes.

Pl.'s Dep. at 92.

Despite this testimony, the plaintiff's assertion appears to be that he thought that the particular line that he touched was not energized or was grounded and/or insulated to prevent an electric shock. The fact that the plaintiff was not informed, as he claims, cannot be blamed on APCo. As previously discussed, the court finds that APCo effectively delegated this duty to PUMI. Once APCo delegated the duty to PUMI, the responsibility or blame lies with PUMI. For the same reasons, the court deems irrelevant the plaintiff's statement that the language barrier between himself and APCo's employees prevented him from knowing that the lines were energized. Accordingly, the court finds that APCo discharged any duty to warn the plaintiff by informing the president of the company and the plaintiff's supervisor that all of the lines might be energized during the performance of the contract.

## CONCLUSION

In sum, the court finds that the plaintiff has failed to raise a genuine issue of material fact as to each of his claims asserted in the complaint. First, APCo owed no duty to the plaintiff to provide him a safe place to work, because APCo did not, by contract or actions, retain the right of control over the premises and did not direct or control the manner in which PUMI performed the work. Second, APCo owed no duty to perform safety inspections as it contractually delegated this duty to PUMI and did not voluntarily conduct any safety inspections. Third, APCo fulfilled any duty it had to warn the plaintiff that the electrical lines were energized by giving notice to the plaintiff's supervisory personnel. Accordingly and for the foregoing reasons, the court finds that defendant Alabama Power Company's motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.